903 P.2d 604

Marion D. WIDGER, an individual; Pecosland Associates, a partnership; WHHC Partnership, a partnership; Continental Service Corp., a corporation, Plaintiffs–Appellants, Cross–Appellees,

v.

ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona; Pinal County, a political subdivision of the State of Arizona; Pinal County Treasurer, an elected official of Pinal County; Pinal County Assessor, an elected official of Pinal County; Pinal County Board of Supervisors, elected officials of Pinal County, Defendants–Appellees, Cross–Appellants.

No. 1 CA–TX 93–0005.

Court of Appeals of Arizona, Division 1, Department T.

Feb. 23, 1995.

Reconsideration Denied March 15, 1995.

Redesignated as Opinion April 13, 1995.

Redesignation as Opinion Reaffirmed May 12, 1995.

Review Denied Sept. 26, 1995.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Donald P. Roelke, Phoenix, for plaintiffs-appellants, cross-appellees.

Grant Woods, the Atty. Gen. by Michael F. Kempner, Asst. Atty. Gen., Phoenix, for defendants-appellees, cross-appellants.

OPINION

GARBARINO, Judge.

The appellants (Taxpayers) appeal from a signed minute entry order dismissing their action for a partial refund of property taxes for 1987 and 1988, and from a later order denying their motion for new trial. The appellees cross-appeal from the portion of the tax court's opinion in *Rio Rico Properties, Inc. v. Santa Cruz County,* 172 Ariz. 80, 834 P.2d 166 (Tax 1992)[1], that found the amending act of Ariz.Rev.Stat.Ann. (A.R.S.) section 11–506 unconstitutional to the extent it attempted to retroactively amend the statute.

FACTS AND PROCEDURAL HISTORY

The subject of this litigation is a 593–acre portion of a section of land located in Pinal County several miles west of Maricopa, Arizona, and immediately south of the southern boundary of the Ak Chin Indian Reservation.

In 1973 the land was being used for farming. In 1974 the previous owners recorded a

1. The tax court's opinion announced its decisions in this case and another, both of which raised the same issue.

subdivision plat, intending to develop the land. Based on the recorded plat, the property was split into 186 parcels of 3.33 acres or less. At that time the assessor followed the policy that a parcel could not qualify as agricultural land unless it contained a minimum of twenty acres.[2] Additionally, the assessor did not recognize common ownership of contiguous pieces of property in determining parcel areas for assessment purposes. Accordingly, because each parcel that now made up the land in question was smaller than twenty acres, each parcel was deemed not to be agricultural property, and from at least 1986 through 1989 the parcels were assessed as vacant residential subdivision lots.

The previous owners abandoned their plan to develop the land shortly after they recorded their subdivision plat. The platted lots were never offered for sale. Although the plat remained of record, the use of the land did not change. From 1973 on, the land was always farmed and under cultivation.

In December 1986 the previous owners sold all their property in Pinal County to the Taxpayers, including the land at issue here. The Taxpayers leased it back to the previous owners, who farmed it through January 1988. The Taxpayers then leased the property and other lands acquired from the previous owners to other persons, who continued to farm it. Larry Fidler, Chief Deputy Pinal County Assessor, testified that he believed that if the Taxpayers' property had not been subdivided, it would have been classified as agricultural from 1975 through the time of trial.

For 1987 and 1988 nearly all the parcels comprising the Taxpayers' land were valued at $1,785 per acre. In those same years farm land in the immediate vicinity was valued at $411 per acre and $470 per acre, respectively. In the joint pretrial statement the parties agreed that those per-acre values would have been applied to the Taxpayers' land had it been assessed as agricultural land for 1987 and 1988.

In 1988 the Taxpayers filed a valuation appeal on the subject property through an agent who was unaware that it was being farmed. The appeal sought a reduction of the market valuation of the land, but did not challenge the assessor's failure to value the land as agricultural. The assessor adjusted the valuation of the parcels, and the appeal went no further.

The same agent appealed the valuation of the parcels for the Taxpayers in 1989. The appeal was again based on the contention that the property was overvalued as vacant land. Later that year, however, the agent discovered that the land was being farmed. The 1989 appeal was ultimately settled through a stipulated judgment in the tax court that classified and assessed the property as agricultural property.

In 1990 the property received an assessment as agricultural property from the county board of equalization to accord with the settlement of the 1989 appeal. In 1991 the assessor recognized the property's agricultural status in his initial valuation.

The Taxpayers brought this statutory mandamus action in April 1990 seeking relief under A.R.S. section 11–506 for tax years 1986 through 1988.[3] See A.R.S. §§ 12–2021

---

**2.** At all times material to this litigation, A.R.S. § 42–162(A)(4) included within "class four" property "[a]ll real property and the improvements to such property, if any, used for agricultural purposes, and all other real property and the improvements to such property, if any, not included in class one, two, three, five or six." A.R.S. § 42–141(A)(5) provided in part: "Land used for agricultural purposes shall be valued using solely the income approach to value without any allowance for urban or market influences." Characterization of property as "used for agricultural purposes" is generally a significant benefit for the landowner. The Arizona Supreme Court has stated: "If land is being used for agricultural purposes in the middle of urban growth, the statute in question requires that it be

appraised on the basis of current usage. If a market data approach were used to appraise the land, the value of surrounding land would reflect the value for future housing or commercial use. This anticipated or future use may not be used in fixing a value for the land being used as a farm." *Golder v. Dep't of Revenue, State Bd. of Tax Appeals*, 123 Ariz. 260, 265, 599 P.2d 216, 221 (1979).

**3.** Before it was amended in 1991, A.R.S. § 11–506 provided in pertinent part:

If all or a part of a property tax has been paid on an erroneous assessment after such assessment is verified by the department of revenue, the county board of supervisors shall

to –2030 (1994). As the issues were narrowed for trial, the Taxpayers sought a declaration that their parcels erroneously had been assessed as nonagricultural property for tax years 1987 and 1988, together with an order directing that appellees correct the classification and valuation for those years and refund overpayments of taxes made on the original nonagricultural assessments.

Following trial, the tax court held that retroactively applying the 1991 amendments limiting taxpayers' relief under A.R.S. section 11–506[4] would unconstitutionally impair vested rights. *Rio Rico Properties,* 172 Ariz. at 91, 834 P.2d at 177. It nevertheless held that the Taxpayers had no claim for relief under pre-amendment section 11–506:

"[E]rroneous assessment" does not mean one the incorrectness of which is to be determined by either a judicial or quasi-judicial fact finding or law interpreting process. The scope of "erroneous assessment" as used in A.R.S. § 11–506 prior to the 1991 amendment included no more than an assessment that arises from a mistake in fact so indisputable when revealed that the existence of the mistake could not reasonably be denied. "Erroneous assessment" did not include within its scope an assessment that is determined to be incorrect by an interpretation by a court of law. Nor does it include an assessment the incorrectness of which arises from a deliberate misapplication of policy by an agent of a taxing authority.

. . . .

In *Widger,* the Pinal County Assessor interpreted the law so that an agricultural classification was not available to land subdivided for sale as residential lots. The

Assessor further refused such a classification to lots of less than 20 acres, and, for assessment purposes, refused to group contiguous lots as one unit. Widger's property, therefore, was not valued as being used for agricultural purposes.

The Assessor's acts, whether right or wrong, were not mistakes. They were an implementation of policy. For that reason, the Taxpayers in *Widger* have no claim under A.R.S. § 11–506. If the Assessor's interpretation of Department guidelines was incorrect, Widger's remedy was in a valuation appeal in the relevant years. A.R.S. § 11–506 was never intended to be used as a vehicle to litigate valuation and classification appeals after the time had passed to litigate them under Title 42. *Id.* at 92–93, 94, 834 P.2d at 178–79, 180.

This appeal and cross-appeal followed.

## ISSUES

1. Did the tax court err by holding that the assessor's nonagricultural valuations of the Taxpayers' property in 1987 and 1988 did not constitute erroneous assessments for which the Taxpayers could claim relief under A.R.S. section 11–506?

2. Did the tax court err by holding that retroactive application of the amended version of A.R.S. section 11–506 to the Taxpayers would unconstitutionally impair their vested rights?

## DISCUSSION

In light of our recent opinions in *S & R Properties v. Maricopa County,* 178 Ariz. 491, 875 P.2d 150 (App.1993), and *E.C. Garcia and Co. v. Arizona State Dep't of Reve-*

___

direct the county treasurer to grant a refund to the taxpayer, to the extent of the erroneous tax paid pursuant to such erroneous assessment after correcting the tax roll, provided the taxpayer submits a claim therefor to the county treasurer within three years after the payment of such erroneous tax.

A.R.S. § 11–506 was repealed by 1994 Ariz. Sess.Laws ch. 323, § 1, effective January 1, 1996.

4. 1991 Ariz.Sess.Laws ch. 182, § 2, as amended by 1991 Ariz.Sess.Laws ch. 303, § 2, added to the then-existing text of A.R.S. § 11–506 a requirement that the county assessor as well as the

department of revenue verify the erroneous assessment, and added a new subsection B:

For purposes of this section, an erroneous assessment is limited to a clerical or computational error or any other error not involving the exercise of discretion, opinion or judgment by the assessor or the department. This section does not apply to questions of valuation that can be appealed according to §§ 42–221 or 42–604. An erroneous assessment does not include an assessment that is uniformly made according to department of revenue guidelines for all similarly classified property.

*nue,* 178 Ariz. 510, 875 P.2d 169 (App.1993), the dispositive question here is whether the tax court erred by holding that the assessor's nonagricultural valuations of the Taxpayers' property for 1987 and 1988 did not constitute "erroneous assessments" for which relief might be granted under pre-amendment A.R.S. section 11–506. We hold that the tax court correctly determined they were not.

In *S & R Properties* each taxpayer owned property that was classified as 100% commercial and contended that only a portion was used for commercial purposes, or owned property classified as residential-rental and contended it was actually an owner-occupied residence. 178 Ariz. at 496, 875 P.2d at 155. In discussing the question of whether pre-amendment A.R.S. section 11–506 was applicable, we stated:

> [W]e adopt the view of the court in *Telco* [*Arizona Telco Fed. Credit Union v. Arizona Dep't of Revenue,* 158 Ariz. 535, 764 P.2d 20 (App.1988) ] that section 11–506 is a simple, alternative means of correcting indisputable assessment errors.... [T]he statute appears to contemplate a method by which a taxpayer can call to the attention of the DOR an alleged error and obtain relief if the error is indisputable....
>
> This construction of the statutory scheme presupposes that the error, which only requires "verification," will be one plainly and indisputably revealed by the County's own records or the taxpayer's claim.... If the November 1 deadline for filing an appeal has passed when a taxpayer discovers an error, and the error is clear and indisputable either from the County's own records or the taxpayer's claim, DOR should verify that error, and the County should issue a refund without the necessity of a formal appeal. *See Telco,* 158 Ariz. at 540, 764 P.2d at 25.
>
> On the other hand, if an alleged erroneous assessment cannot be determined without the resolution of disputed issues of fact and the assessment of credibility of witnesses, and such error has not been adjudicated in the appeal process, it is not an error that can be "verified" by DOR. The function of the appeal process is to resolve disputed issues of fact and law between the taxpayers and the taxing authority. We believe the legislature did not intend for the refund process to be used as a forum to litigate such issues. Consequently, a taxpayer who fails to appeal an alleged erroneous assessment, the determination of which depends on the adjudication of disputed issues of fact or law, may not litigate his right to a refund under section 11–506.

*Id.* at 501–02, 875 P.2d at 160–61.

In *E.C. Garcia* the taxpayers' property was used continuously for agriculture and was valued as such for tax purposes through 1986. 178 Ariz. at 512, 875 P.2d at 171. In 1987 and 1988 the Pima County Assessor valued the property as nonagricultural. *Id.* at 512, 513, 875 P.2d at 171, 172. In 1989 two parcels of the taxpayers' property were valued as nonagricultural. *Id.* at 513, 875 P.2d at 172. The taxpayers successfully appealed the 1988 nonagricultural valuation; as to the 1989 valuation, they entered into an agreement with the Pima County Assessor and the department of revenue to value the property as agricultural. *Id.*

The taxpayers also appealed the 1987 valuation but failed to perfect the appeal. *Id.* at 512, 514–15, 875 P.2d at 171, 173–74. Subsequently, a special action was filed seeking a refund of the 1987 property taxes pursuant to A.R.S. section 11–506. *Id.* at 512, 513, 875 P.2d at 171, 172. The tax court declined to accept jurisdiction of the taxpayers' special action, and the taxpayers appealed to this Court. *Id.* at 514, 875 P.2d at 173. In discussing the applicability of the pre-amendment version of A.R.S. section 11–506, we stated:

> Contrary to the argument of the County and the Department, *Telco's* interpretation of A.R.S. section 11–506 did not conflict with section 42–204(E) or render the property tax appeal process a nullity. By its terms, A.R.S. section 11–506 allowed a refund of taxes paid on an erroneous assessment only when the assessment is "verified by the Department of Revenue...." If the Department did not agree that the assessment was erroneous, the Taxpayer had no claim for relief under A.R.S. section

11–506. In that situation the Taxpayers' exclusive remedy is to pursue the property tax appeal process according to the procedures and time limits established by A.R.S. sections 42–176 or 42–246.

We also reject the argument of the County and the Department that the term "erroneous assessment" in A.R.S. section 11–506 was limited to administrative or clerical errors that are clear on the face of the tax roll, and that it cannot encompass questions of valuation or classification. We agree with *Telco* that A.R.S. section 11–506 was a remedial statute.... In our opinion, where property that was in fact used for agricultural purposes was valued on the tax roll as non-agricultural property, the result was an "erroneous assessment" within the meaning of that term in A.R.S. section 11–506.

*Id.* at 516–17, 875 P.2d at 175–76. We also stated that we agreed with the opinion in *S & R Properties.* *Id.* at 519, 875 P.2d at 178.

Read together, *S & R Properties* and *E.C. Garcia* stand for the proposition that, although pre-amendment A.R.S. section 11–506 applied to more than mere administrative or clerical errors that are obvious on the face of the tax roll, relief was available under that statute only for assessment errors that were clear and indisputable without the need for resolution of contested issues of fact or law. The errors in *S & R Properties* and *E.C. Garcia* plainly fit that description. The same is true of the error Division Two of this Court found remediable in *Telco,* in which the taxpayer's credit union property was classified as class three (commercial), while at the same time other credit unions received the more favorable class four classification.[5] 158 Ariz. at 539–40, 764 P.2d at 24–25.

We find the instant case distinguishable from the cases discussed above. A.R.S. section 42–229 provides: "If two or more contig-

uous lots, tracts of land or patented mines are owned by the same person, they *may* be jointly assessed and one valuation fixed for the whole." (Emphasis added). Based on this permissive language, at all material times the assessor followed a policy of declining to recognize combined acreages, like the Taxpayers' 186 subdivided lots, for the purpose of valuation. Because Department of Revenue Agricultural Manual No. 1532 required that field crop land have an area of at least twenty acres to qualify as agricultural property, the assessor's policy resulted in individual nonagricultural valuation for all the Taxpayers' lots despite their *de facto* combined use as a farming operation.[6]

As is obvious from the trial transcript and the briefs, this valuation/classification decision cannot be characterized as an "error" that was "clear and indisputable either from the County's own records or from the taxpayer's claim" and which did not depend "on the adjudication of *disputed issues of* fact or *law.*" *S & R Properties,* 178 Ariz. at 501, 502, 875 P.2d at 160, 161 (emphasis added). Determining whether the assessor's action was legally correct properly would have been "[t]he function of the appeal process." *Id.* at 502, 875 P.2d at 161.

## CONCLUSION

The tax court did not err by holding that the Taxpayers had no claim under pre-amendment A.R.S. section 11–506. Because of our resolution of this issue, we need not consider whether the tax court erred by holding that A.R.S. section 11–506, as amended in 1991, could not retroactively apply here. The tax court's ruling is affirmed.

LANKFORD, P.J., and NOYES, J., concur.

---

5. The practice of placing credit unions in class four was in accordance with a 1971 department of revenue letter to the chief appraiser for Maricopa County. We have no occasion in this appeal to consider whether this practice was or would be legally correct.

6. Effective for tax years beginning with 1991, A.R.S. § 42–221(E) was amended to permit valu-

ation or classification change petitions to include more than one parcel of property if all have a common owner and the same use, are located in the same geographic area, and are appealed on the same basis. 1990 Ariz.Sess.Laws ch. 360, §§ 11, 24. The assessor evidently interpreted this as ending his authority to refuse to recognize contiguous parcels of agricultural property.