490 S.E.2d 261

John M. RIVERS, Jr., and Kathleen H. Rivers, Respondents,

v.

STATE of South Carolina, Appellant.

Thomas WARING, Trustee of the Legrand Elebash
Irrevocable Trust, Respondent,

v.

STATE of South Carolina, Appellant.

Thomas WARING, Trustee of the Alice Palmer
Elebash Irrevocable Trust, Respondent,

v.

STATE of South Carolina, Appellant.

John M. RIVERS, Jr., as Personal Representative
of the Estates of Martha R. Rivers and John
M. Rivers, Respondent,

v.

STATE of South Carolina, Appellant.

No. 24682.

Supreme Court of South Carolina.

Heard June 3, 1997.

Decided Sept. 2, 1997.

General Counsel Harry T. Cooper, Jr., Chief Counsel for Revenue Litigation Ronald W. Urban, Counsel for Revenue Litigation Sarah G. Major, Columbia, for Appellant.

T. Heyward Carter, Jr., Edward G.R. Bennett, and Amy Morrison Fraser, all of Evans, Carter, Kunes & Bennett, P.A., Charleston;  Henry E. Grimball, of Buist, Moore, Smythe & McGee, P.A., Charleston, all for Respondents.

TOAL, Justice.

This case concerns certain controversial state capital gains tax legislation enacted in 1988, 1989, and 1991.  The circuit

court found Rivers and the other respondents ("Taxpayers") possessed a vested property interest in a capital gains tax refund scheduled to be distributed in 1992. The court held that because Taxpayers' property right was vested, any subsequent legislation taking away that right would effect a taking in violation of the United States and South Carolina Constitutions. It further held that even if the elimination of the refund constituted a retroactive tax rather than removal of a vested property right, the elimination of the refund violated the Due Process Clauses of the South Carolina and United States Constitutions.

The State of South Carolina, through the South Carolina Department of Revenue ("Department of Revenue"), has appealed the order of the circuit court. We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

On June 8, 1988, the General Assembly enacted Act No. 658, 1988 S.C. Acts, Part II section 27 ("Act 658").[1] The Act provided for a retroactive decrease in the capital gains tax rate for capital gains realized between January 1, 1987 and January 31, 1988. Act 658 also provided refunds for overpayment of capital gains taxes paid for gains realized during 1987 through January 1988.

In 1989, the General Assembly amended Act 658 to change the dates for which a retroactive decrease would be available. Under the 1989 Amendment, only capital gains realized before June 22, 1987[2] would be eligible for the retroactive tax decrease. The 1989 Amendment also amended Act 658 to provide that the refund would be made "in two equal annual installments with the first refund due to be paid when refunds

---

1. For a more extensive discussion of the circumstances surrounding the enactment of the legislation at issue in this lawsuit, see *State ex rel. Carter v. State*, 325 S.C. 204, 481 S.E.2d 429 (1997).

2. The capital gains tax had been retroactively increased on June 22, 1987, so that persons who had realized capital gains prior to that date had expected one tax rate but had to pay a higher rate when they filed their 1987 tax returns. Act 658 and its 1989 Amendment were intended to return taxpayers who paid the higher rate to the position they would have been in had the capital gains tax not been retroactively increased.

are paid for the 1990 taxable year." As provided for in the 1989 Amendment, refunds equal to one-half of the capital gains tax savings were issued to affected taxpayers when taxpayers received their 1990 tax refunds.

The primary statute at issue in this appeal, Act No. 171, 1991 S.C. Acts, Part II section 6 ("Act 171"), altered the 1989 Amendment by reducing by half the size of the refund each affected taxpayer would receive. The result of Act 171 was that affected taxpayers did not receive the second half of the refund provided for in Act 658 and the 1989 Amendment; rather, the refund the taxpayers had received at the time of the 1990 tax refunds comprised the entire refund the taxpayers would receive under Act 171.

Respondent Taxpayers had realized capital gains on property sold between January 1, 1987 and June 22, 1987. Accordingly, Act 658 and the 1989 Amendment provided for them to receive a refund, half of which was to be paid with the 1990 tax refunds and the other half the following year. Taxpayers received the first annual refund. However, the enactment of Act 171 prevented them from receiving the second annual refund as provided for in the earlier legislation.

Taxpayers filed suit against the State of South Carolina, arguing, among other things, that Act 171 effected a taking of property in which they had a vested interest. They advanced additional arguments why they were entitled to the second half of the refund. The circuit court accepted their arguments and found them entitled to the refund with interest as provided by statute.

Department of Revenue appeals, raising three questions:

1. Did the trial court err in determining Act 171 results in a taking without compensation, or, in the alternative, a violation of the Due Process Clauses of the United States and South Carolina Constitutions?

2. Did the trial court err in finding Act 171 violates S.C.Code Ann. § 12–7–2220?

3. Did the trial court err in finding S.C.Code Ann. § 34–31–20 entitles Taxpayers to interest on any refunds they were due?

LAW/ANALYSIS

## A. CONSTITUTIONALITY OF ACT 171—TAKINGS LAW AND DUE PROCESS

Department of Revenue first argues the trial court erred in determining Act 171 violates the federal and state constitutions. We hold that although Act 171 did not effect a taking of property in which Taxpayers had a vested interest, the legislation violated due process because of its excessive retroactivity.

■ Under ordinary takings law, in order for Act 171 to have effected a taking, Taxpayers would have to have had a vested right to the money at issue. *E.g., Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). However, this rule does not apply in the context of taxing legislation. First, case law from the United States Supreme Court and courts throughout the country makes clear that taxpayers have no vested interest in tax laws remaining unchanged: "Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." *United States v. Carlton,* 512 U.S. 26, 33, 114 S.Ct. 2018, 2023, 129 L.Ed.2d 22, 30 (1994); *accord Canisius College v. United States,* 799 F.2d 18, 25 (2d Cir.1986) (finding that retroactive legislation is not unconstitutional merely because it upsets settled expectations or effectively imposes a new liability on a past act), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987); *Varrington Corp. v. New York City Dep't of Fin.,* 85 N.Y.2d 28, 623 N.Y.S.2d 534, 536, 647 N.E.2d 746, 748 (1995) ("Since tax legislation is not a governmental promise, Varrington has no vested or actionable right in these circumstances to the benefit of a tax statute or regulation."); *Fidelity Bank v. Commonwealth,* 165 Pa.Cmwlth. 524, 645 A.2d 452, 460 n. 14 (1994) (citing *Carlton* for proposition that tax legislation is not a promise and taxpayer has no vested right in a particular treatment).

■ Second, "even though taxes ... indisputably 'take' money from individuals or businesses, assessments of that kind are not treated as per se takings under the Fifth Amendment." *Branch v. United States,* 69 F.3d 1571, 1576 (Fed.Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 55, 136

L.Ed.2d 18 (1996); *see also A. Magnano v. Hamilton,* 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934) (taxing power of state or federal government not considered a taking under the Fifth or Fourteenth Amendment); *Kane v. United States,* 942 F.Supp. 233, 234 (E.D.Pa.1996) (finding increase in tax rate did not effect taking where statute was not so "arbitrary as to amount to a confiscation of property rather than an exaction of tax").

To distinguish takings law concerning the government's power to tax, Taxpayers suggest Act 171 is not a tax statute at all, but simply a statute conferring a vested property right upon them. Taxpayers then cite certain cases suggesting tax refunds have been treated as property interests in other contexts. *See, e.g., Chicago v. Michigan Beach Hous. Co-op.,* 242 Ill.App.3d 636, 182 Ill.Dec. 343, 609 N.E.2d 877 (1993) (finding expected income tax refunds are general intangible property interests under the Uniform Commercial Code).

■ In our view, there is little way to read Act 171 *except* as a taxing statute. As the Department of Revenue notes, Act 171 is part of Title 12 and directly concerns the payment of *tax* refunds. As a practical matter, by denying Taxpayers a refund, Act 171 in effect amounts to an increase in Taxpayers' capital gains tax rate. We conclude that takings law is inapplicable because Taxpayers had no vested interest in the receipt of the tax refund; as described in *Canisius College,* 799 F.2d 18, all Taxpayers may have had was a "settled expectation" they would receive the refund.

■ However, even if Act 171 did not effect a taking of Taxpayers' property, the Act violated substantive due process under both the state and federal constitutions. The United States Supreme Court has held that the government's power to impose taxes retroactively is not unlimited and that certain tax laws can violate the Due Process Clause.

In *United States v. Carlton,* 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22, the Court defined the parameters of the government's retroactive taxation power. In that case, an executor of an estate purchased certain shares in a corporation and then sold them at a loss. Under the estate tax laws in effect at the time of his purchase and sale of the shares, the estate was entitled to a large deduction because of the sale of the

shares. In fact, the executor purchased and then sold the shares at issue in order to receive the tax deduction. The executor filed the estate tax return claiming this allowed deduction. *Id.* at 28, 114 S.Ct. at 2021, 129 L.Ed.2d at 27.

Approximately one year after the executor filed the tax return, Congress amended the estate tax laws to exclude the estate at issue (and others like it) from eligibility for the deduction the executor had claimed. This new law was made retroactive to a period before the executor had filed the estate tax return. Accordingly, the Internal Revenue Service disallowed the deduction and the estate was forced to pay an estate tax deficiency, with interest. The executor then brought suit claiming retroactive application of the statute violated the Due Process Clause of the Fifth Amendment. *Id.* at 29, 114 S.Ct. at 2021, 129 L.Ed.2d at 27.

The United States Supreme Court held the law did not violate due process. Observing that "[t]his Court repeatedly has upheld retroactive tax legislation against a due process challenge," the Court clarified the test to apply in determining whether retroactive tax legislation violates due process. First, the legislation must be "supported by a legitimate legislative purpose furthered by rational means." *Id.* at 30–31, 114 S.Ct. at 2022, 129 L.Ed.2d at 28 (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601, 611 (1984)). Second, the period of retroactivity must be "modest." *Id.* at 32, 114 S.Ct. at 2023, 129 L.Ed.2d at 29.

The retroactivity period in *Carlton* was approximately one year, and the legislation had actually been proposed only a few months after the executor filed the estate tax return. The Court found such a period of time permissible under the Due Process Clause. *Id.* at 32, 114 S.Ct. at 2023, 129 L.Ed.2d at 29. However, in concurrence, Justice O'Connor expressed her skepticism with retroactivity periods exceeding one year:

> In every case in which we have upheld a retroactive federal tax statute against due process challenge ... the law applied retroactively for only a relatively short period prior to enactment.... *A period of retroactivity longer than the year preceding the legislative session in which the law was enacted would raise, in my view, serious constitutional*

*questions.* But in keeping with Congress' practice of limiting the retroactive effect of revenue measures ... the December 1987 amendment to § 2057 was made retroactive only to October 1986. Given our precedents and the limited period of retroactivity, I concur in the judgment of the Court that applying the amended statute to respondent Carlton did not violate due process.

*Id.* at 38, 114 S.Ct. at 2026, 129 L.Ed.2d at 33 (O'Connor, J., concurring) (emphasis added) (citations omitted). *See also, e.g., Furlong v. Comm'r of Internal Revenue,* 36 F.3d 25 (7th Cir.1994) (noting retroactive tax legislation will be upheld if supported by rational purpose and if period of retroactivity is short; Seventh Circuit upheld tax law with retroactivity period of approximately *one month* ); *Kane v. United States,* 942 F.Supp. 233 (E.D.Pa.1996) (holding estate tax law with eight-month retroactivity period did not violate due process; citing *Carlton* for the proposition that approximately one year is a permissible period of retroactivity, but that greater periods were suspect). *But see Tate & Lyle v. Comm'r of Internal Revenue,* 87 F.3d 99 (3d Cir.1996) (upholding under Due Process Clause treasury regulation with six-year retroactivity period; distinguished *Carlton* by stating *Carlton* concerned permissible retroactivity periods for statutes, not regulations); *Montana Rail Link, Inc. v. United States,* 76 F.3d 991 (9th Cir.1996) (upholding against due process challenge tax legislation with approximately four-year retroactivity period; noting that *Carlton* requires only that the particular period of retroactivity bear a "rational relation to [the statute's] underlying legislative purpose").

■ In the present case, the retroactivity period [3] of Act 171 far exceeds one year. In fact, depending on whether one calculates the retroactivity period back to the 1989 Amend-

---

**3.** Department of Revenue attempts to argue Act 171 was not retroactive, because the second half of Taxpayers' expected refund had not yet been paid and was not yet due to be paid. We find that Taxpayers had an expectation of the full tax refund when the earlier legislation—particularly the 1989 Amendment—was passed. In our view, the portion of the legislation stating the refund would be paid in the future merely concerned the *method* of payment of the refund, not whether (under the 1989 Amendment) a full refund was owed. Therefore, Act 171 operated retroactively to deprive Taxpayers of their expectation of a full capital gains tax refund.

ment or to Act 658 of 1988, the period at issue is at least two years and possibly as long as three years. We find Act 171 violates due process under both the state and federal constitutions. To be sure, the government possesses considerable power to tax and to collect taxes from its citizenry, and retroactive tax legislation has long been accepted as an appropriate means for achieving certain revenue goals. At some point, however, the government's interest in meeting its revenue requirements must yield to taxpayers' interest in finality regarding tax liabilities and credits. That point has been reached in this case; under the facts and circumstances here, the retroactivity period is simply excessive.[4]

In light of our conclusion that Act 171 violates the Due Process Clauses of the South Carolina and United States Constitutions, we need not reach the question whether the denial of the tax refunds violated S.C.Code Ann. § 12–7–2220.[5]

### B. CALCULATION OF INTEREST

Department of Revenue next argues that if the Court should find Taxpayers are entitled to the second half of the refund as provided for in the 1989 Amendment, then the rate of interest under S.C.Code Ann. § 12–54–25 (Supp.1996)[6] should govern, rather than the rate of interest specified in S.C.Code Ann. § 34–31–20 (1987).[7] We agree.

Respondent Taxpayers acknowledge that section 12–54–25 should govern if the second half of the monies due them

---

4. We do not suggest that *every* retroactivity period of this length is *per se* unreasonable. In some instances, a lengthy period of retroactivity may be necessary to accomplish certain legitimate legislative ends. However, this is not such a situation.

5. Section 12–7–2220 has been repealed, but still applies to this controversy.

6. Section 12–54–25 provides that the rate of interest for underpayments and overpayments of taxes is to be established "in the same manner and at the same time as the underpayment rate provided in Internal Revenue Code Sections 6621 and 6622."

7. Section 34–31–20 sets the legal rate of interest at 8.75% for ordinary debts and at 14% for judgments. The trial court held Respondents were entitled to 8.75% prior to entry of the judgment and 14% afterwards.

constituted a "tax." In light of our conclusion in Part A that Act 171 certainly was a taxation statute, as was the 1989 Amendment, we find section 12–54–25(C) should apply. In fact, section 12–54–25(C) specifically applies to tax refunds, and Taxpayers are, after all, arguing their entitlement to the second half of a tax refund. Therefore, interest on the refunds owed Taxpayers shall be calculated at the rate provided for by section 12–54–25.

## CONCLUSION

For the foregoing reasons, the decision of the circuit court is **AFFIRMED IN PART AND REVERSED IN PART.**

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.