211 P.3d 1

**ENTERPRISE LEASING COMPANY OF PHOENIX; Enterprise Leasing Company–West, Plaintiffs–Appellants,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant–Appellee.**

**No. 1 CA–TX 06–0017.**

Court of Appeals of Arizona, Division 1, Department T.

Dec. 16, 2008.

**124**

Steptoe & Johnson, LLP By Patrick Derdenger, Bennett Evan Cooper, Mark Vilaboy, Phoenix, Attorneys for Plaintiffs–Appellants.

Terry Goddard, Attorney General By Michael F. Kempner, Assistant Attorney General, J. Gregory Marble, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Enterprise Leasing Company of Phoenix (Enterprise Leasing) and Enterprise Leasing Company–West (Enterprise–West) (collectively, Taxpayer) appeal from a grant of partial summary judgment holding that Taxpayer was not entitled to income tax credits under Arizona Revised Statutes (A.R.S.) section 43–1170 (1995) for the cost of emission control equipment integrated into its motor vehicles. Finding no genuine dispute of material fact or legal error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Applicable Statute

¶ 2 The Arizona Legislature enacted a pollution control equipment tax in 1994 as part of Senate Bill 1523. *See* Ariz. Sess. Laws 1994, ch. 117, § 6, 41st Leg., 2d Reg. Sess. (1994). Effective January 1, 1995, the statute provided in relevant part:

A.  A credit is allowed against the taxes imposed by this title for expenses that the taxpayer incurred during the taxable year to purchase real or personal property that is used to control or prevent pollution. The amount of the credit is equal to ten percent of the purchase price.

B.  Property that qualifies for the credit under this section includes that portion of a structure, building, installation, excavation, machine, equipment or device and any attachment or addition to or reconstruction, replacement or improvement of that property that is directly used, constructed or installed for the purpose of meeting or exceeding rules or regulations adopted by the United States environmental protection agency, the department of environmental quality or by a political subdivision of this state to prevent,

monitor, control or reduce air, water or land pollution.

A.R.S. § 43–1170. This statute's legislative history reflects that the credit was designed "to encourage companies to consider expansion or renovations now." *See* Minutes of Comm. on Ways and Means, S.B. 1523 (Ariz. March 22, 1994) (statement of Scott Butler). The minutes contain no discussion about applying the credit to equipment attached to motor vehicles.

¶ 3 The Legislature initially estimated the cost of the pollution control credits at about $2.5 million annually. Joint Legislative Budget Comm. Staff Memorandum on General Fund Impact of S.B. 1504 at 5 (Ariz. March 29, 2000). In December 1999, the Arizona Department of Revenue (the Department) received its first claim for a pollution control credit for equipment attached to a motor vehicle. It then became evident that, absent legislative clarification, the tax credit could cost the State about $15 million annually.

¶ 4 The Legislature responded promptly. By March 10, 2000, it had prepared Senate Bill 1504 to "[c]orrect[ ] the current income tax credit for pollution control equipment to exclude motor vehicle equipment." H.R. Summary of S.B. 1504, 44th Leg., 2d Reg. Sess. (Ariz. March 10, 2000). In April 2000, the Legislature amended the statute based upon Senate Bill 1504 to state that: "The credit allowed pursuant to this section does not apply to the purchase of any personal property that is attached to a motor vehicle." Ariz. Sess. Laws 2000, ch. 405, § 21, 44th Leg., 2d Reg. Sess. (2000). The revised legislation states that these changes were intended "to be clarifying changes and are consistent with the legislature's intent when those sections were enacted." Ariz. Sess. Laws 2000, ch. 405, § 30(B), 44th Leg., 2d Reg. Sess. (2000). Another stated purpose was "to close loopholes." Minutes of Comm. on Gov't Reform at 19, S.B. 1504 (Ariz. March 10, 2000) (statement of House Speaker Jeff Groscost). The legislation further provides that it is to "apply retroactively to taxable years beginning from and after December 31, 1994." Ariz. Sess. Laws 2000, ch. 405, § 40(A), 44th Leg., 2d Reg. Sess. (2000).

## B. This Litigation

¶ 5 Taxpayer rents, leases, and sells motor vehicles to customers. A motor vehicle manufacturer installs emissions control equipment in these vehicles.

¶ 6 During the fiscal years ending in July 1996, 1997, and 1998 (the Refund Period), Taxpayer filed Arizona income tax returns without claiming any pollution control credits. On March 14, 2000, Enterprise Leasing filed refund claims totaling $2,440,843 plus interest for pollution control devices pursuant to A.R.S. § 43–1170 during the Refund Period. Meanwhile, Enterprise–West filed a similar claim for $1,283,539 plus interest.

¶ 7 The Department denied Taxpayer's claims. Taxpayer appealed the denial by filing two complaints (TX 2003–000551 and TX 2003–000552) in the Arizona Tax Court pursuant to A.R.S. § 42–1254(C) (2006). After consolidation, the parties filed cross-motions for partial summary judgment. The tax court ruled in the Department's favor on two alternative theories: the retroactivity of the 2000 amendment was constitutionally valid, and Taxpayer was not eligible for the credit under the plain language of the original tax credit statute. This appeal followed.

## DISCUSSION

### A. The Retroactive Amendment Did Not Deprive Taxpayer Of Due Process Or Violate The Separation Of Powers

¶ 8 The tax court held that the 2000 amendment to A.R.S. § 43–1170 applied retroactively and did not violate the constitution. Taxpayer contests this holding. We consider both the due process and separation of powers arguments.

#### 1. Due Process

¶ 9 This court presumes that statutes are constitutional and attempts to construe them in a constitutional manner when possible. *Baker v. Arizona Dep't of Revenue*, 209 Ariz. 561, 564, ¶ 10, 105 P.3d 1180, 1183 (App.2005). As the challenging party, Taxpayer bears the burden of proof and must show beyond a reasonable doubt that the statute conflicts with the state or federal

constitution. *Hall v. A.N.R. Freight Sys., Inc.,* 149 Ariz. 130, 133, 717 P.2d 434, 437 (1986) (explaining that substantive rights may not be impaired once vested), *superseded by statute on other grounds as recognized by Dykeman v. Engelbrecht,* 166 Ariz. 398, 400–01, 803 P.2d 119, 121–22 (App.1990).

¶ 10 We presume that a statutory amendment changes the prior law. *State v. Bridgeforth,* 156 Ariz. 60, 63, 750 P.2d 3, 6 (1988). The Arizona Legislature's amendment, however, indicates that the original version of A.R.S. § 43–1170 did not give taxpayers a right to a tax credit for pollution control devices integrated into a vehicle. Our Supreme Court has stated: "It is ... clear ... that '[a]n amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act.'" *State v. Sweet,* 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985) (quoting *City of Mesa v. Killingsworth,* 96 Ariz. 290, 297, 394 P.2d 410, 414 (1964)); *see generally* 2 C. Sands, *Sutherland Statutory Construction* § 41.11, at 289–90 (4th ed.1973) (cited in *Canisius College v. United States,* 799 F.2d 18, 27 (2d Cir.1986)) (curative legislation is typically entitled to a liberal construction); *but see San Carlos Apache Tribe v. Superior Ct.,* 193 Ariz. 195, 209, ¶ 30, 972 P.2d 179, 193 (1999) (the suggestion that the 1995 legislature can clarify what an earlier legislature in 1919 or 1974 intended carries us "into the world of speculation").

¶ 11 The legislative branch has the power to explain a statute and ensure that it is not extended beyond its intended reach. It may clarify the statute by amendment if the statute is ambiguous. *Circle K Stores, Inc. v. Apache County,* 199 Ariz. 402, 409, ¶ 22, 18 P.3d 713, 720 (App.2001). Therefore, curative statutes generally are not found to violate due process on retroactivity grounds. *See* Stephen R. Munzer, *A Theory of Retroactive Legislation,* 61 Tex. L.Rev. 425, 468 (Nov.1982). One indication of whether a statute is truly curative is whether the Legislature has provided specific guidance about the meaning of the amendment.

¶ 12 In this case, the Legislature indicated its curative intent as directly as possible. It stated that the revisions were intended to be "clarifying changes and are consistent with the legislature's intent when those sections were enacted" and were intended to "apply retroactively to taxable years beginning from and after December 31, 1994." Ariz. Laws 2000, ch. 405, §§ 40(A)41, 44th Leg., 2d Reg. Sess. (2000). A retroactive clarification does not violate due process. *See Honeywell, Inc. v. Minn. Life & Health Ins. Guar. Ass'n,* 110 F.3d 547, 555–56 (8th Cir.1997) (holding that an amendment to a fifteen-year-old statute narrowing the definition of "contractual obligation" did not violate the due process clause).

¶ 13 Following Taxpayer's argument would require us to approve a windfall because the original statute was not meant to grant a right to such a credit. *See* Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L.Rev. 692, 705 (1960) (hereinafter *Supreme Court*). The clarifying amendment explained what the original legislation intended and did not change the status quo. Therefore, the amendment did not retroactively abolish a right.

¶ 14 Even if the amendment is not curative, it still passes muster under the due process clause. As a threshold matter, we must point out that even a retroactive statute is entitled to a presumption of constitutionality. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). The plethora of decisions upholding retroactive legislation attests that a statute does not violate due process merely because it is retroactive. *See* Hochman, *Supreme Court,* 73 Harv. L.Rev. at 705 ("The [Supreme] Court's favorable treatment of curative statutes is probably explained by the strong public interest in the smooth functioning of government. It is necessary that the legislature should be able to cure inadvertent defects in statutes or their administration by making what has been aptly called 'small repairs.'").

¶ 15 Deference is especially essential when reviewing retroactive tax legislation for due process purposes. *See Quarty v. United States,* 170 F.3d 961, 965 (9th Cir.1999). As

we pointed out in *Baker,* and the Ninth Circuit has observed, "the United States Supreme Court has never sustained a due process challenge to the retroactive application of an income tax." 209 Ariz. at 567, ¶ 26, 105 P.3d at 1186 (citing *Licari v. Comm'r of Internal Revenue,* 946 F.2d 690, 694 (9th Cir.1991)).

¶ 16 Our due process analysis requires us to determine whether Taxpayer had a protected property or liberty interest in the tax credit, and if so, whether the deprivation of that right satisfies the rational basis test. For these purposes, a property right includes "any vested right of any value." *Rio Rico Props., Inc. v. Santa Cruz County,* 172 Ariz. 80, 88, 834 P.2d 166, 174 (Tax 1992) (citation omitted), aff'd, *Widger v. Ariz. Dep't of Revenue,* 183 Ariz. 296, 903 P.2d 604 (App.1995). In *United States v. Carlton,* the United States Supreme Court specifically rejected the argument that the taxpayer had a viable vested right or detrimental reliance interest. 512 U.S. 26, 33, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). It explained that "[t]ax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." *Id.;* accord *Rivers v. State,* 327 S.C. 271, 490 S.E.2d 261, 263 (1997) (explaining that "case law from the United States Supreme Court and courts throughout the country makes clear that taxpayers have no vested interest in tax laws remaining unchanged") (citations omitted).

¶ 17 Nor can Taxpayer contend that its rights vested because it filed a claim one month before the 2000 amendment. We have held that a taxpayer's right does not vest merely by filing a claim. *See S & R Props. v. Maricopa County,* 178 Ariz. 491, 498, 875 P.2d 150, 157 (App.1993). The Department must verify or accept the claim before vesting can occur. *Id.* at 499, 875 P.2d at 158. The right did not vest because the Department had not accepted or verified the claim. *See id.*

¶ 18 Unlike the *Baker* taxpayers, Taxpayer here cannot even demonstrate actual detrimental reliance. It waited to apply until after clarifying legislation was introduced and one month before the amendment was signed.

¶ 19 Not only was Taxpayer's right not vested and without an actual reliance basis, but the Department's action under the retroactive amendment "is supported by a legitimate legislative purpose furthered by rational means." *See Carlton,* 512 U.S. at 30–31, 114 S.Ct. 2018 (citation omitted); *see generally Usery,* 428 U.S. at 18–19, 96 S.Ct. 2882 (upholding retroactive liability of coal mine operators for disability of miners attributed to pneumoconiosis because a rational basis existed for the enactment). *Carlton* found a legitimate legislative purpose in correcting what it considered a mistake in order to avoid "a significant and unanticipated revenue loss." 512 U.S. at 32, 114 S.Ct. 2018. Thus, Congress acted reasonably in limiting the qualification requirements for the deduction. *Id.* at 31–32, 114 S.Ct. 2018. The retroactive application was "neither illegitimate nor arbitrary." *Id.* at 32, 114 S.Ct. 2018.

¶ 20 Likewise, in *Baker,* this court upheld a similar provision designed to stem an unanticipated revenue loss and close a loophole in the alternative fuel statute. 209 Ariz. at 569, ¶ 36, 105 P.3d at 1188. Our analysis relied upon *Montana Rail Link, Inc. v. United States,* 76 F.3d 991, 994 (9th Cir.1996), which held that preventing revenue loss was a legitimate government purpose. *Baker,* 209 Ariz. at 568, ¶ 31, 105 P.3d at 1187.

¶ 21 The 2000 amendment satisfies the due process standard outlined in *Baker* and *Carlton.* As in *Baker,* the amendment here similarly removes a credit to forestall an unplanned loss estimated at $15 million per year, and a possible total exposure of $60 million. This goal is legitimate and rationally furthered by the legislation.

¶ 22 Taxpayer contends, however, that its rights were violated because the retroactivity period extended six years, from 2000 back to 1994. According to Taxpayer, retroactivity in excess of one year is what creates a due process issue.

¶ 23 We do not interpret our precedents as creating a talismanic cutoff of one year. The one-year concept arises out of Justice O'Connor's concurrence in *Carlton,*

not the majority opinion. She stated: "A period of retroactivity longer than the year preceding the legislative session in which the law was enacted would raise, in my view, serious constitutional questions." *Id.* at 38, 114 S.Ct. 2018 (O'Connor, J., concurring). Yet she also cited *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938), as an example of a permissible two-year retroactivity period and explained that the state legislature met only biannually and made the revision "at the first opportunity after the tax year in which the income was received." *Carlton*, at 38, 114 S.Ct. 2018 (citation omitted). She also opined that Congress should not "upset otherwise settled expectations" and the "governmental interest in revising the tax laws must at some point give way to the taxpayer's interest in finality and repose." *Id.* at 37–38, 114 S.Ct. 2018. Ultimately, Justice O'Connor upheld the application of the amended statute to the *Carlton*

taxpayer's claim. *Id.* at 38–39, 114 S.Ct. 2018.[1]

¶ 24 Justice O'Connor's concurrence indicated that a retroactivity period in excess of one year raises constitutional concerns, but stopped short of advocating a *per se* prohibition against upholding such periods.[2] Some leeway for longer retroactivity exists so long as the legislature acts at the earliest notice or opportunity. *See Carlton*, at 38, 114 S.Ct. 2018. The amended statute in *Carlton* was introduced shortly after it "became evident" to Congress that the original statute might cause an unexpected revenue loss of "over 20 times greater than anticipated." *Id.* at 31, 114 S.Ct. 2018.

¶ 25 That is what happened here. The Arizona Legislature did not receive any pollution control equipment claims for motor vehicles until December 1999, about five years after the law's enactment. A Joint Legislative Budget Committee memorandum, dated March 29, 2000, warned that without a

1. Other courts have upheld longer retroactivity periods. *See Licari*, 946 F.2d at 694 (approving four-year retroactivity and explaining that the permissive standard for retroactivity statutes stems from the fact that the amount is not a penalty but a tax); *Canisius College v. United States*, 799 F.2d 18, 27 (2nd Cir.1986) (holding that four-year retroactivity period for a FICA tax amendment did not violate due process in light of its curative purpose); *Tate & Lyle, Inc. v. Comm'r of Internal Revenue*, 87 F.3d 99, 107 (3rd Cir.1996) (upholding six-year retroactivity period of a Treasury Regulation requiring the taxpayer to use a cash method of accounting); *Montana Rail Link*, 76 F.3d at 994–95 (upholding retroactive application of a tax statute with a four-year retroactivity period); *see also Honeywell*, 110 F.3d at 555–56 (upholding amendment retroactive to fifteen years earlier in a non-tax case). These authorities undercut the assertion in *City of Modesto* that generally only retroactivity periods occurring during the current tax year can survive a due process challenge. *City of Modesto v. Nat'l Med, Inc.*, 128 Cal.App.4th 518, 27 Cal. Rptr.3d 215, 222 (2005).

Taxpayer complains that some authorities are irrelevant because they construe regulations, not statutes. Nevertheless, an agency obtains the power to promulgate retroactive regulations only if Congress expressly conveys that authority. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). Moreover, the principles of construction that apply to statutes generally apply with equal force to administrative rules and regulations. *Kimble v. City of Page*, 199 Ariz. 562, 565, ¶ 19, 20 P.3d 605, 608 (App.2001).

Taxpayer cites other cases in which the taxpayer had actually waited with expectations during five or six years. In contrast to this case, interests in finality and repose were at issue in those cases. *See City of Modesto*, 27 Cal.Rptr.3d at 223 (holding that retroactive amendment that required a taxpayer to "produce documentation from up to nine years ago that it otherwise was never required to maintain" violated the due process clause). Moreover, the amended ordinance itself stated that the apportionment provision could only apply prospectively. *Id.* at 221. Likewise, the amendment in *Rivers* "retroactively [deprived] Taxpayers of their expectation of a full capital gains tax refund." 490 S.E.2d at 265 n. 3.

Finally, Taxpayer directs us to *Johnson Controls, Inc. v. Rudolph*, 2006 WL 1195498 (Ky. App. May 5, 2006). Because this is an unpublished decision, we decline to address it. ARCAP 28(c); *see Walden Books Co. v. Ariz. Dep't of Revenue*, 198 Ariz. 584, 589, ¶¶ 20–23, 12 P.3d 809, 814 (App.2000).

2. Another *Carlton* concurrence, authored by Justice Scalia and joined by Justice Thomas, concludes: "Revenue raising is certainly a legitimate legislative purpose … and any law that retroactively adds a tax, removes a deduction, or increases a rate rationally furthers that goal." 512 U.S. at 40, 114 S.Ct. 2018 (Scalia, J., concurring). Further, Justice Scalia explains that "the key timing issue is whether the change occurs after the reliance; that it occurs immediately after rather than long after renders it no less harsh." *Id.*

clarification of the statute, the State could lose $15 million in pollution control credits, taking into account the claimants seeking credits for auto parts. The Legislature enacted the 2000 amendment on April 28, 2000, about one month after Taxpayer filed its refund claims. As the tax court concluded, measuring retroactivity between the date of the claim and the amendment, the retroactivity period here was modest. *See King v. Campbell County*, 217 S.W.3d 862, 870 (Ky. Ct.App.2006) (analyzing *Carlton* and holding that retroactive amendment for a fee credit did not violate due process because it followed an unanticipated court interpretation of the original provision, even though the original statute had passed nine years earlier).

¶ 26 Another salient distinction is that the *Carlton* taxpayer relied upon the prior unambiguous statute and filed a proper claim based upon his correct interpretation of it. There was no question that he had properly interpreted the earlier version of the law and had expectations of how it would apply. Taxpayer, in contrast, had not been waiting six years believing that it was entitled to a refund. It did not file a claim until one month before the 2000 amendment was signed. Although Taxpayer points to the Department letter, that document was not a taxpayer ruling. Taxpayer fails to acknowledge the revocation of the letter and the Department's assertion that its employee's statement did not reflect the Department's opinion. Accordingly, Taxpayer has not substantiated a fixed expectation or detrimental reliance. Under the circumstances, Taxpayer's interest in finality and repose is minimal. The amendment by its terms did not change the law as it did in *Carlton*, but rather clarified what the law had always been. *See* 512 U.S. at 39, 114 S.Ct. 2018 (Scalia, J., concurring) (explaining that in *Carlton* "what was done to respondent here went beyond a 'cure' ").

¶ 27 Even if, as Taxpayer contends, detrimental reliance occurred, it is not enough to satisfy *Carlton*. After acknowledging the loss suffered by the taxpayer, *Carlton* declared that "reliance alone is insuf-ficient to establish a constitutional violation." *Id.* at 33, 114 S.Ct. 2018. Therefore, the length of the reliance is not material here.

### 2. Separation of Powers

¶ 28 We similarly reject Taxpayer's argument that the legislative clarification "violates constitutional principles of separation of powers" under article III of the Arizona Constitution. The Legislature may be entitled to retroactively change a civil statute in a manner deviating from a court's interpretation of it. *See State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 448–49, ¶ 16, 88 P.3d 159, 162–63 (2004) (finding no separation of powers issues even though the Legislature retroactively changed the statutory definition of a term in a previous statute and overturned the court's earlier interpretation of the term).

¶ 29 Taxpayer relies upon distinguishable criminal cases analyzing the separation of powers doctrine and its violation when the Legislature uses a clarification to retroactively overrule a decision by the courts. *See State v. Fell*, 209 Ariz. 77, 80, 97 P.3d 902, 905 (App.2004); *State v. Rodriguez*, 153 Ariz. 182, 186–87, 735 P.2d 792, 796–97 (1987). The statute here did not retroactively overrule a court decision. Moreover, the *Fell* statute and legislative history did not even reflect that the statutory change was intended to be a clarification. 209 Ariz. at 81, ¶ 14, 97 P.3d at 906. With respect to *Rodriguez*, the Legislature did not make the amended statute effective retroactive to the stabbing death at issue there. 153 Ariz. at 185, 735 P.2d at 795. In any event, as *Fell* acknowledged, statutory changes in criminal statutes generally cannot apply retroactively to earlier criminal offenses without raising *ex post facto* concerns. *See* 209 Ariz. at 80, ¶ 10, 97 P.3d at 905.[3]

### CONCLUSION

¶ 30 We affirm the tax court's grant of partial summary judgment to the Department, and deny Taxpayer's request for attorneys' fees on appeal.

---

**3.** Due to our resolution of this issue, we need not address whether Taxpayer would have qualified for a tax credit under the original statutory language.

CONCURRING: LAWRENCE F. WINTHROP and PATRICK IRVINE, Judges.