26 P.3d 1181

**Betty J. BERNHART, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Fry's Food Stores, Respondent Employer,**

**Royal Insurance \*,\* \*; ITT Hartford\* \* \*, \* \* \* \*; Alexis\* \* \* \* \*, \* \* \* \* \* \*, \* \* \* \* \* \*, Respondent Carriers.**

**No. 1 CA–IC–99–0136.**

Court of Appeals of Arizona, Division 1, Department B.

June 28, 2001.

Ronald M. Meitz, Phoenix, Attorney for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Ronald H. Moore, P.C., by Ronald H. Moore, Phoenix, Attorneys for Respondent Employer Fry's Food Stores.

Jardine, Baker, Hickman & Houston, P.L.L.C., by Scott H. Houston, Phoenix, Attorneys for Respondent Carrier Royal Insurance and Respondent Employer Fry's Food Stores.

Doherty & Venezia, P.C., by Julie A. Doherty, Phoenix, Attorneys for Respondent Carrier ITT Hartford and Respondent Employer Fry's Food Stores.

## OPINION

FIDEL, Judge

¶ 1 The Industrial Commission of Arizona denied Claimant disability and medical compensation for three claims on the statutory grounds of "wilful self-exposure," A.R.S. § 23–901.04, and "unreasonable refusal or neglect to submit to or follow any competent or reasonable surgical treatment or medical aid." A.R.S. § 23–1027. Concluding that the Commission misapplied these statutes, we set its decision aside.

### I. HISTORY

¶ 2 Claimant worked as a baker from 1961 until 1997, and for Respondent Employer Fry's since 1974. Exposure to flour dust caused her to develop baker's asthma. Episodic asthma symptoms led her to seek medical treatment and file seven industrial injury claims, including claims with dates of injury

of February 7, 1994, September 6, 1995, and June 4, 1997 ("the 1990s claims").

¶ 3 Before 1997, each time Claimant's symptoms subsided, her doctors released her to return to work in the bakery. The doctors also, however, repeatedly cautioned her to avoid exposure to flour dust and sometimes recommended that she consider other employment. For example, in a March 1990 report, Brendan D. Thompson, M.D., stated that Claimant

> really needs to avoid the flour dust. She can either wear a mask or respirator at work. She states there are problems with each of these.
>
> Otherwise, she needs to remove herself from that environment. She may be able to do other jobs at work, but the flour dust tends to permeate the area.

Dr. Thompson confirmed that he discussed these conclusions with Claimant.

¶ 4 Claimant has understood since 1981 that she is allergic to flour dust. Further, according to Claimant, masks failed to protect her from the flour dust. Yet because she wanted to continue earning her union pay scale at a position with job security, she repeatedly returned to the bakery, and because she was able to work for periods without symptoms, she believed that she "was going to be okay and it wouldn't happen again." Although Claimant could have maintained her earnings and avoided exposure to flour dust by working as a cake decorator, she explained that she did not apply for this position because the risk of being laid off was too high. Claimant denied that any doctor informed her that she risked permanent damage, as opposed to episodic exacerbation of symptoms, by continually exposing herself to flour dust.

¶ 5 Fry's then-current production supervisor had known of Claimant's breathing difficulties since 1987. Fry's supplied masks but did not require employees to use them. Although the supervisor knew that Claimant wore a mask only intermittently, he never spoke with her about wearing a mask or taking a protected position.

¶ 6 In a consolidated award for non-compensable claims, the administrative law judge ("ALJ") found that Claimant's flour dust exposure had caused her to develop an occupational disease. He also found, however, that Claimant had known since 1974 that her exposure to flour dust in the bakery was "harmful ... to her pulmonary process." He concluded that because Claimant "continued to expose herself once she became aware that her work environment was causing her pulmonary problems," she was not entitled to receive "compensation or disability" under § 23–901.04. He also concluded that because Claimant had knowingly continued to expose herself to an injurious work environment until Dr. Thompson refused to release her back to work, § 23–1027 barred recovery for her 1990s claims.

## II. A.R.S. § 23–901.04

¶ 7 Occupational diseases, though covered by workers' compensation, are subject to strictures that do not apply to other types of industrial injuries. *See* A.R.S. §§ 23–901.01 to –901.05. Among those strictures, § 23–901.04 denies "compensation for disability from an occupational disease" when a cause of the disability is an employee's "wilful misconduct, wilful self-exposure or disobedience to ... reasonable rules and regulations adopted by the employer...." A.R.S. § 23–901.04(A). "Wilful self-exposure" is at issue in this case.

### A. *Non–Compensability*

■ ¶ 8 Before reaching Claimant's argument that the statutory meaning of wilful self-exposure is unsatisfied in her case, we consider her argument that, even if her case is one of wilful self-exposure, the statute does not justify an outright denial of compensability for her occupational disease. We agree.

■ ¶ 9 Both the ALJ and Fry's misquote § 23–901.04(A) as denying "compensation *or* disability from an occupational disease." (Emphasis added.) The statute instead denies "compensation *for* disability from an occupational disease." (Emphasis added.) The distinction is significant. The unqualified term "compensation" generally includes both disability and medical benefits. *See Sneed v. Belt,* 130 Ariz. 229, 232–33, 635 P.2d 517, 520–21 (App.1981) (quoting A.R.S. § 23–

901(4)). In § 23–901.04, however, the denial is restricted to "compensation for disability." The statute thus denies only disability compensation under §§ 23–1044 to –1046 and not medical benefits under § 23–1062(A).

¶ 10 An award for a non-compensable claim generally forecloses all benefits and rights under the Workers' Compensation Act. *See, e.g., Vigil v. Indus. Comm'n,* 113 Ariz. 292, 293, 552 P.2d 453, 454 (1976). *But see Gerhardt v. Indus. Comm'n,* 181 Ariz. 215, 218, 889 P.2d 8, 11 (App.1994) (recognizing narrow exception allowing reopening of non-compensable claim as to "unforeseen" medical condition). Because § 23–901.04 denies only disability benefits for an otherwise compensable occupational disease, that statute does not justify the consolidated award finding Claimant's 1990s claims non-compensable in their entirety. Accordingly, on this basis in and of itself, we must set the Industrial Commission decision aside.

### B. Wilful Self–Exposure

¶ 11 We go on however, to consider Claimant's argument that the provision against wilful self-exposure is inapplicable to her 1990s claims. We consider this argument to guide the Commission on an issue that will recur upon remand. Claimant argues that the provision is inapplicable because her conduct does not fall within the types of behavior identified as "wilful self-exposure" in § 23–901.04(B). Specifically, subsection 23–901.04(B) provides that "the term 'wilful self-exposure' includes" the failure to respond truthfully to three types of inquiry by an employer.[1] Claimant argues, in effect, that "includes" is a term of limitation, defining "wilful self-exposure" to "include *only*" the three forms of non-disclosure set forth in subsection B.

¶ 12 We disagree. In ordinary usage, "INCLUDE suggests the containment of something as a constituent, component, or subordinate part of a larger whole." Webster's

Ninth New Collegiate Dictionary 609 (1985). The term is "not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Federal Land Bank of St. Paul v. Bismarck Lumber Co.,* 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed. 65 (1941). Indeed, in subsection B, the term "includes," while surely not one of "all-embracing definition," seems not even a term of "illustrative application" so much as one of enlargement, serving to bring within the definition of "wilful self-exposure" three enumerated sub-categories that ordinary usage would not otherwise place there. *See Adams v. Dole,* 927 F.2d 771, 775 (4th Cir.1991) (items following the word "including" may be merely illustrative or may add definitional content).

¶ 13 We therefore reject Claimant's contention that "wilful self-exposure," as used in § 23–901.04(A), is limited to the forms set forth in § 23–901.04(B). The question remains what is meant by "wilful self-exposure" in subsection A.

¶ 14 In addressing that question, we first observe that "wilful" is historically a term of special meaning within the Workers' Compensation Act. It derives this meaning from § 23–1022, the section that makes workers' compensation the exclusive remedy for occupational injuries to workers who have not chosen in advance of injury to opt out of the system. *See* A.R.S. § 23–1022(A). This statute, part of the Workers' Compensation Act since its inception in 1925, provides an exception for injuries caused by the "wilful misconduct" of the employer or a co-employee. In such instances, a worker may elect *after* injury whether to claim workers' compensation or bring a civil damage action against the employer. *Id.* This exception is refined, however, by § 23–1022(B), which provides, " 'Wilful misconduct' as used in this section means an act done knowingly and purposely with the direct object of injuring

---

1. Specifically, subsection B includes as forms of wilful self-exposure the failure to respond truthfully to an employer's inquiry regarding "place, duration and nature of previous employment," § 23–901.04(B)(1); an employer's inquiry as to whether the employee "had previously been disabled, laid off, or compensated ... because of

any physical disability," § 23–901.04(B)(2); and an employer's inquiry "about the previous status of [the employee's] health, previous medical and hospital attention and direct and continuous exposure to active pulmonary tuberculosis." § 23–901.04(B)(3).

another." *See also Serna v. Statewide Contractors, Inc.,* 6 Ariz.App. 12, 16, 429 P.2d 504, 508 (1967) (the wilful misconduct exception requires "deliberate intention as distinguished from some kind of intention presumed from gross negligence").

¶ 15 Just as "wilful misconduct" has been circumscribed in meaning as an exception to our exclusive remedy statute, it has similarly been circumscribed in jurisdictions around the country as a ground for denying applicants compensation as a consequence of their own fault. Larson observes that the application of the "wilful misconduct" defense has not been "as broad as the term itself might lead one to expect. After all, 'wilful misconduct' could mean almost anything." 2 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 34.01, at 34–2 (2000). The defense has been unsuccessful, according to Larson, when asserted in response to acts that were "instinctive or thoughtless, rather than intentional and deliberate," *id.* § 34.02, at 34–5, and "generally successful in only one narrow field, that of intentional violation of safety regulations." *Id.* § 34.01, at 34–2.

¶ 16 Larson's observation regarding "wilful misconduct" applies equally to "wilful self-exposure": the term "can mean almost anything" if not rigorously defined. Indeed, the risk of overly expansive application of the latter term may be even greater, for, without definitional rigor, "wilful self-exposure" might take on all the trappings of assumption of risk, a doctrine historically antithetical to workers' compensation law. *See generally* Lawrence M. Friedman and Jack Landinsky, *Social Change and the Law of Industrial Accidents,* 67 COLUM. L.REV. 50 (1967) (describing evolution of workers' compensation systems in reaction against fellow servant rule, assumption of risk, and contributory negligence as limitations on recovery for workplace injuries at common law); *Arizona Workers' Compensation Handbook,* §§ 1.1—1.2, at 1–1—1–4 (Ray Jay Davis et al. eds., 1992 & Supp.1998) (describing fellow servant rule, contributory negligence, and assumption of risk as an "unholy trinity" of hurdles to workplace recovery, giving rise eventually

to movement toward workers' compensation laws).

¶ 17 In tort law, as in workers' compensation law, the concept of wilfulness has evolved to connote "conscious and deliberate disregard." *See Rawlings v. Apodaca,* 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986) (to support punitive damages requires "such a *conscious and deliberate disregard* of the interests of others that the conduct may be called wilful or wanton," and such conduct may be inferred when the actor "was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur").

¶ 18 We conclude that "wilful self-exposure" as used in § 23–901.04(A) must mean something more than a mere decision to expose oneself, for reasons of employment, to a risk of illness or injury that one's job entails. Rather, it connotes a level of knowing and deliberate behavior comparable to that described in the authorities we have reviewed: a conscious and deliberate disregard for a substantial and unjustifiable risk of significant self-harm. The Commission shall accordingly apply that definition upon remand in considering whether Claimant's conduct amounts to wilful self-exposure in this case.

### III.  A.R.S. § 23–1027

¶ 19 The ALJ alternatively relied on § 23–1027 to justify denying compensability for the 1990s claims. This section states, "No *compensation* shall be payable *for the . . . disability* of an employee . . . insofar as his disability may be aggravated, caused or continued by an unreasonable refusal or neglect to submit to or follow any competent or reasonable surgical treatment or medical aid." A.R.S. § 23–1027 (emphasis added).

¶ 20 Claimant contends that § 23–1027 presupposes a compensable claim. We agree. Like § 23–901.04, which we discussed in Section II(A) of this decision, § 23–1027, if its circumstances are found applicable, can support only the denial of disability benefits and not a denial of compensability. *See supra* ¶¶ 9, 10. Accordingly, neither statute supports the consolidated award finding Claimant's 1990s claims non-compensable in their entirety.

#### IV. CONCLUSION

¶ 21 Because the ALJ misapplied §§ 23–901.04 and 23–1027, we set aside the consolidated awards denying compensability. Although we have confined our discussion to the three 1990s claims, the consolidated awards encompass petitions to reopen four earlier claims as well. The parties responsible for the four earlier claims urge us to affirm the part of the award addressing them. As a general rule, however, we must set aside a consolidated award as a whole. *See, e.g., Professional Furniture Serv. v. Indus. Comm'n,* 133 Ariz. 206, 209, 650 P.2d 508, 511 (App.1982). A limited exception applies if, among other things, the claims are not interrelated. *See id.* Here, however, because Fry's continues to assert preclusion based on the prior claims, the prior claims and the 1990s claims are interrelated. We therefore must set aside the consolidated award as a whole.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and WILLIAM F. GARBARINO, Judge.