210 P.3d 1268

Christopher M. WATTS; Mandy J. Watts; Benno E. Jurgemeyer; Lorraine A. Jurgemeyer; Garth E. Price; Lorie M. Price; Michael L. Watts; Cynthia A. Watts; and John Deere Industrial Holdings, Inc., Plaintiffs–Appellants,

v.

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona, Defendant–Appellee.**

**No. 1 CA–TX 08–0002.**

Court of Appeals of Arizona, Division 1, Department T.

May 26, 2009.

---

Bauman Loewe Witt & Maxwell, PLLC By C. Edwin Witt, Jr., Scottsdale, Attorneys for Plaintiffs–Appellants.

Terry Goddard, Attorney General By Michael F. Kempner, Assistant Attorney General, Scot G. Teasdale, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Taxpayers[1] appeal from a grant of summary judgment holding that they are not entitled to pollution control income tax credits under Arizona Revised Statutes (A.R.S.) sections 43–1170 (1998) (credits for corporations) or 43–1081 (1998) (credits for individuals) for the cost of water trucks and water wagons they leased to others during tax years 1998 to 2001. Finding no genuine dispute of material fact or error of law, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A. The Pollution Control Income Tax Credit Statutes

¶ 2 In 1994, the Arizona Legislature enacted two statutes providing a pollution control income tax credit as part of Senate Bill 1523.

---

1. The taxpayers in this consolidated appeal are Christopher M. Watts, Mandy J. Watts, Benno E. Jurgemeyer, Lorraine A. Jurgemeyer, Garth E. Price, Lorie M. Price, Michael L. Watts, Cynthia A. Watts, and John Deere Industrial Holdings, Inc. (John Deere). The individual taxpayers listed here are shareholders of Watts Holdings, Inc.

1994 Ariz. Sess. Laws, ch. 117, §§ 3, 6, 41st Leg. (2d Reg.Sess.). Effective beginning December 31, 1994, *id.* at § 7, A.R.S. §§ 43–1170 and 43–1081 provided in relevant part:

A. A credit is allowed against the taxes imposed by this title for expenses that the taxpayer incurred during the taxable year to purchase real or personal property that is used to control or prevent pollution. The amount of the credit is equal to ten percent of the purchase price.

B. Property that qualifies for the credit under this section includes that portion of a structure, building, installation, excavation, machine, equipment or device and any attachment or addition to or reconstruction, replacement or improvement of that property that is directly used, constructed, or installed for the purpose of meeting or exceeding rules or regulations adopted by the United States environmental protection agency, the department of environmental quality or by a political subdivision of this state to prevent, monitor, control or reduce air, water or land pollution.

¶ 3 The legislative history of A.R.S. § 43–1170 suggests that the credit was designed "to encourage companies to consider expansion or renovations now." *Minutes of Comm. on Ways and Means,* S.B. 1523 (Ariz. March 22, 1994) (statement of Scot Butler). The minutes are devoid of any discussion about applying the credit to equipment attached to motor vehicles. *Enter. Leasing Co. of Phoenix v. Ariz. Dep't of Revenue,* 545 Ariz. Adv. Rep. 19, 19, ¶ 2, 221 Ariz. 123, ¶ 2, 211 P.3d 1 (App.2008).

¶ 4 In 1995, the Legislature modified A.R.S. §§ 43–1170(A–B) and 43–1081(A–B) to read as follows:

A. A credit is allowed against the taxes imposed by this title for expenses that the taxpayer incurred during the taxable year to purchase real or personal property that is used *in the taxpayer's trade or business*

---

(Watts Holdings), a subchapter S corporation, whose tax attributes flow through to its shareholders. 26 U.S.C. § 1366. Watts Holdings and John Deere, a Delaware corporation, are members/owners of Sunstate Equipment Company, L.L.C. (Sunstate).

*in this state* to control or prevent pollution. The amount of the credit is equal to ten percent of the purchase price.

B. Property that qualifies for the credit under this section includes that portion of a structure, building, installation, excavation, machine, equipment or device and any attachment or addition to or reconstruction, replacement or improvement of that property that is directly used, constructed, or installed *in this state* for the purpose of meeting or exceeding rules or regulations adopted by the United States environmental protection agency, the department of environmental quality or a political subdivision of this state to prevent, monitor, control or reduce air, water or land pollution.

1995 Ariz. Sess. Laws, ch. 200, §§ 15, 18, 42d Leg. (1st Reg. Sess.) (emphasis added for additions). These amendments apply retroactively to the taxable years beginning from and after December 31, 1994. *Id.* at § 21(L).

¶ 5 The Legislature initially pegged the annual cost of the pollution control credits at about $2.5 million. Joint Legislative Budget Comm. Staff Memorandum on General Fund Impact of S.B. 1504, at 5 (Ariz. March 29, 2000). In December 1999, the Arizona Department of Revenue (the Department or ADOR) received the first claim for a pollution control income tax credit for equipment attached to a motor vehicle. *Enter. Leasing,* 545 Ariz. Adv. Rep. at 19, ¶ 3, 221 Ariz. at 125, ¶ 3, 211 P.3d at 3. Lawmakers then realized that, without clarifying legislative action, the tax credit could cost the state about $15 million annually. *Id.*

¶ 6 By March 10, 2000, the Legislature had drafted Senate Bill 1504 in an effort to "[c]orrect the current income tax credit for pollution control equipment to exclude motor vehicle equipment." H.R. Summary of S.B. 1504, 44th Leg., 2d Reg. Sess. (Ariz. March 10, 2000). In April 2000, the Legislature amended section B of both A.R.S. §§ 43–1081 and 43–1170 to state: "The credit allowed pursuant to this section does not apply to the purchase of any personal property that is attached to a motor vehicle." 2000 Ariz. Sess. Laws, ch. 405, §§ 26, 30, 44th Leg. (2d Reg.Sess.).

¶ 7 According to the revised legislation, the amendments "are intended to be clarifying changes and are consistent with the legislature's intent when those sections were enacted." 2000 Ariz. Sess. Laws, ch. 405, § 41, 44th Leg. (2d Reg.Sess.). Another purpose was to "close loopholes." *Minutes of Comm. on Gov't Reform* at 19, S.B. 1504 (Ariz. March 10, 2000) (statement of House Speaker Jeff Groscost). The legislation additionally provides that it is to "apply retroactively to taxable years beginning from and after December 31, 1994." 2000 Ariz. Sess. Laws, ch. 405, § 40(A), 44th Leg. (2d Reg.Sess.).

**B. This Action**

¶ 8 Taxpayers are the indirect owners of Sunstate. Sunstate is a Delaware limited liability company that has filed Arizona partnership tax returns for tax years 1998 through 2001. Because Sunstate is treated as a partnership for federal and state income tax purposes, its tax attributes pass through to Taxpayers, its members/owners. *See* 26 U.S.C. §§ 701 to 761 (2004).

¶ 9 Sunstate is in the equipment leasing business, serving primarily construction job sites, and maintains several locations in Arizona and other states. The equipment at issue consists of water trucks and water wagons or trailers. The water trucks are registered as motor vehicles with the Motor Vehicle Division of the Arizona Department of Transportation. They are outfitted with water tanks and pumps. The water wagons feature a 500–gallon water tank and built-in hitches for attachment to motor vehicles and can exceed 5700 pounds when filled. The equipment is installed on the vehicles by the manufacturer.

¶ 10 The water trucks and water wagons are designed for multiple uses, including: (1) dust control and ditch jetting; (2) fighting fires; (3) washing equipment and/or machinery; (4) spraying horse arenas; (5) watering trees and city street plants; (6) "feeding" highway equipment; and (7) watering concrete slabs. Sunstate's Chief Financial Officer Garth Price testified that "any number of possible uses could come of [the water trailers and trucks], limited only by your imagination." Likewise, Sunstate's equipment rental agreements acknowledge that "Lessor

has no control over the use of the Equipment by Lessee . . . ." Indeed, Northern Arizona University used one of Sunstate's water trucks for "Mud Volleyball 2000" and Cutler Fire Protection has also leased a vehicle.

¶ 11 Taxpayers filed their income tax returns for 1998 through 2001 without claiming a pollution control income tax credit for the water trucks and water wagons. On August 20, 2002, they submitted an income tax refund claim totaling $402,170 for tax years 1998 to 2001 based upon claimed income tax credits for these vehicles under A.R.S. § 43-1081 (pollution control income tax credits for individuals) and § 43-1170 (pollution control income tax credits for corporations). Taxpayers did not amend their returns for the tax years at issue.

¶ 12 On March 31, 2003, the Department denied Taxpayers' refund claims based on the failure to use the equipment in their business to control or prevent pollution, and the equipment's attachment to a motor vehicle. Taxpayers protested, but the Department's hearing officer upheld the decision. Accordingly, Taxpayers took small claims appeals, and the cases were eventually consolidated and transferred to the Arizona Tax Court.

¶ 13 The parties cross-moved for summary judgment. Taxpayers claimed that the lessees' use of the water trucks and water wagons to spray water, dust suppressant, or adhesive soil stabilizer solutions on undeveloped ground at construction sites established their own eligibility for the credits. They submitted affidavits from several of the thousand lessees and two Sunstate employees attesting that, during the vast majority of their job site visits, they had observed the water trucks and water wagons being used for dust control purposes. The tax court ruled in favor of the Department, denied Taxpayers' motion, and entered judgment. This appeal followed.

## DISCUSSION

**A. Taxpayers' Last Antecedent Interpretation Is Inconsistent With the Plain Terms of A.R.S. §§ 43–1170 and 43–1081**

¶ 14 We review the tax court's grant of summary judgment de novo. *Wilderness World, Inc. v. Ariz. Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). Likewise, we review de novo the tax court's interpretation of the relevant statutes. *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 594, 826 P.2d 1217, 1220 (App. 1991).

¶ 15 Taxpayers are seeking a tax credit. Tax credits are obtained by legislative grace and not by right. *DaimlerChrysler Servs. N. Am., L.L.C. v. Ariz. Dep't of Revenue*, 210 Ariz. 297, 304, ¶ 25, 110 P.3d 1031, 1038 (App.2005) (citation omitted). In Arizona, we construe tax statutes strictly against such credits. *E.g., Ariz. Dep't of Revenue v. Raby*, 204 Ariz. 509, 511, ¶ 16, 65 P.3d 458, 460 (App.2003) ("[T]ax deductions, subtractions, exemptions, and credits are to be strictly construed.").

¶ 16 The resolution of this issue turns on our construction of A.R.S. §§ 43–1170 and 43–1081. "[W]e first look to the language of the statute and will ascribe plain meaning to the terms unless they are ambiguous." *Mago v. Mercedes–Benz, U.S.A., Inc.*, 213 Ariz. 404, 408, ¶ 15, 142 P.3d 712, 716 (App.2006). The critical language in both statutes provides a tax credit for expenses incurred in a taxable year "to purchase real or personal property that is used in the taxpayer's trade or business in this state to control or prevent pollution." A.R.S. §§ 43–1170(A), –1081(A).

¶ 17 The tax court reasoned that the phrases "in this state" and "to control or prevent pollution" modified "used." Taxpayers themselves do not use the equipment in their trade or business in this state to control or prevent pollution. Instead, they lease the equipment to others who may or may not use the water trucks and water wagons to prevent pollution. Accordingly, the tax court concluded that the tax credit statutes did not apply to Taxpayers. We agree.

¶ 18 Taxpayers nevertheless insist that "to control or prevent pollution" only modified "in this state" under the rule of the last

antecedent.[2] According to this view, Taxpayers need not demonstrate that their business is "to control or prevent pollution." But as the tax court pointed out, the Arizona Legislature included these phrases in one uninterrupted sentence. The word "used" appears only once in the sentence and connects the entire following part of the sentence, which includes "in the taxpayer's trade or business in this state to control or prevent pollution."

¶ 19 We conclude that the Legislature intended each word to influence every other word in this sentence. A contrary conclusion would require us to find that "used in the taxpayer's trade or business," "in this state" and "to control or prevent pollution" would modify "real or personal property" but would not modify "used," and that "in this state" could not modify "to control or prevent pollution."

¶ 20 It is highly unlikely that the Arizona Legislature intended to grant a pollution control tax credit to a taxpayer that does not use its property for that purpose and has no control over whether its lessees use the property for that purpose. As the Department points out, Taxpayers stand in no better position than a retailer who sells water trucks and water wagons to end users, but does not use them itself to prevent pollution.

¶ 21 Another problem with Taxpayers' last antecedent construction is that it requires us to infer that the "in this state" restriction does not apply to "used" and that the Legislature was willing to sacrifice tax revenues for the purpose of reducing pollution in other states. Such a construction would neither benefit Arizona nor advance its compliance with the Clean Air Act's mandates.[3]

■ ¶ 22 We reject such a construction. "[T]he clear intent of the legislature takes precedence as a canon of construction of all grammatical rules, and particularly of [the

rule of last antecedent]." *Gamez v. Indus. Comm'n,* 213 Ariz. 314, 320, ¶ 36, 141 P.3d 794, 800 (App.2006) (quoting *S. Tucson v. Pima County,* 52 Ariz. 575, 584, 84 P.2d 581, 585 (1938)).

¶ 23 Taxpayers alternatively argue that we must construe A.R.S. §§ 43–1170 and 43–1081 *in pari materia* with the agricultural pollution control tax credits enacted in 1998 and codified at A.R.S. §§ 43–1081.01(A) and 43–1170.01(A). They contend that the agricultural statutes are more restrictive because they require a showing that personal property "is primarily used in the taxpayer's trade or business in this state to control or prevent pollution." A.R.S. §§ 43–1081.01(A), – 1170.01(A). Regardless of how these statutes apply, the fact remains that Taxpayers do not use the property in their business to control or prevent pollution and cannot qualify for pollution control income tax credits under A.R.S. §§ 43–1170 or 43–1081.

## B. Taxpayers Do Not Directly Use the Water Trucks and Water Wagons In This State to Meet or Exceed Pollution Rules and Regulations

¶ 24 Not only does Taxpayers' construction contradict the plain terms of A.R.S. §§ 43–1170(A) and 43–1081(A), but it is also inconsistent with the rest of the statutory scheme. In two related provisions, A.R.S. §§ 43–1170(B) and 43–1081(B), the Arizona Legislature imposes an additional tax credit requirement for qualifying property "that is directly used, constructed, or installed in this state for the purpose of meeting or exceeding rules or regulations adopted ... to prevent, monitor, control or reduce air, water or land pollution."

¶ 25 The undisputed facts reflect that Taxpayers do not directly use the property to meet or exceed rules or regulations concern-

---

**2.** *See generally Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.,* 165 Ariz. 31, 34, 796 P.2d 463, 466 (1990) ("The last antecedent rule is recognized in Arizona and requires that a qualifying phrase be applied to the word or phrase immediately preceding as long as there is no contrary intent indicated."); Black's Law Dictionary 882 (6th ed.1990) (describing the last antecedent rule as "[a] canon of statutory construction that relative or qualifying words or phrases are to be applied

to the words or phrases immediately preceding, and as not extending to or including other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by the intent and meaning of the context, or disclosed by an examination of the entire act.").

**3.** The tax court found that, for the most part, the lessees use the equipment in this state.

ing pollution. Taxpayers emphasize that their lessees are required to use the property during construction to minimize dust and other air contaminants under Arizona Administrative Code (A.A.C.) R18–2–604(A). This regulation applies only to persons who "cause, suffer, allow or permit" construction activity. *Id.* Some of the lessees qualify, but Taxpayers and Sunstate do not. Taxpayers have identified no pollution control function for which they directly use the water trucks and wagons and, consequently, they are not using them in the manner that A.R.S. §§ 43–1170(B) and 43–1081(B) require.

¶ 26 Indeed, Taxpayers have proffered no statutory text or legislative history materials that would support a positive legislative intent to extend the pollution control credits to equipment lessors. Without such evidence, we construe the statute strictly against Taxpayers and conclude that they are not entitled to a tax credit.

¶ 27 Our resolution of this issue obviates the need to address the parties' alternative arguments concerning the administrative burden of verifying the actual uses of the water trucks and water wagons. We also need not consider whether Taxpayers' failure to file amended tax returns precludes them from receiving pollution control tax credits.

C.  **Section 1–249 Does Not Preclude the Retroactive Application of the 2000 Amendments**

■ ¶ 28 Taxpayers alternatively contend that the 2000 amendment should not apply to their claim for those tax years prior to its enactment. According to Taxpayers, A.R.S. § 1–249 (2002) precludes this application:

**Repealing act; effect on pending action or accrued right**

No action or proceeding commenced before a repealing act takes effect, and no right accrued is affected by the repealing act, but proceedings therein shall conform to the new act so far as applicable.

¶ 29 Taxpayers premise their construction of A.R.S. § 1–249 on *Brunet v. Murphy*, 212 Ariz. 534, 538–40, ¶¶ 18–25, 135 P.3d 714, 718–20 (App.2006), but their reliance on that case is misplaced. In *Brunet*, a personal

representative filed an amended complaint alleging that a physician had violated the Adult Protective Services Act (the APSA), A.R.S. §§ 46–451 to –457 (1998). *Id.* at 536–37, ¶¶ 4–6, 135 P.3d at 716–17. Four months earlier the Arizona Legislature had amended the APSA to limit physicians' responsibilities unless they qualified under a designated category. *Id.* at 536, ¶¶ 5–6, 135 P.3d at 716. The physician defendant's actions had occurred prior to the amendment's enactment, when the APSA still provided for claims. *Id.* at 536–37, ¶¶ 6–7, 135 P.3d at 716–17.

■ ¶ 30 We held that any "accrued" right against the physician defendant under the former version of the APSA was lost and prevented from vesting because the plaintiff had not filed until after the amendment had taken effect. *Id.* at 539, ¶ 20, 135 P.3d at 719. "[U]ntil the holder of the accrued right chooses to assert it, the right is subject to an 'event that may prevent [its] vesting,' such as the running of the statute of limitations or a change in the law by the legislature." *Id.* at 538, ¶ 13, 135 P.3d at 718 (citation omitted).

¶ 31 Likewise, even assuming that Taxpayers had accrued rights prior to filing their refund claims in 2002, their rights had not vested and the 2000 amendment prevented them from vesting. Because their rights did not vest, the amendment did not constitute a retroactive abrogation. *See id.*

■ ¶ 32 The general savings statute, A.R.S. § 1–249, fails to preserve any such rights. The statute establishes a "rule of statutory construction to the effect that the mere repeal of a statute without any further action by the Legislature does not terminate any accrued right conferred by the statute," and provides "a general method of enforcing such rights." *Higgins' Estate v. Hubbs*, 31 Ariz. 252, 264, 252 P. 515, 520 (1926) (arising under a predecessor statute). In this case, the Legislature made the 2000 amendment expressly retroactive and demonstrated an intent not to preserve any claims under prior law inconsistent with the amendment.

■ ¶ 33 Moreover, A.R.S. § 1–249 cannot apply because the 2000 amendment was not a "repealing act." In *Brunet*, this court found that the amendment created a statuto-

ry exception "to eliminate the previously existing right to bring an APSA claim against physicians" like the defendant. *Brunet,* 212 Ariz. at 539, ¶ 22, 135 P.3d at 719. We find no intent in the 2000 amendment to eliminate a previously existing right to claim the income tax credit for equipment attached to a motor vehicle. The legislative history indicates that there was no discussion about applying the laws to vehicles in the original 1994 bill. Rather, the law was intended to clarify that taxpayers were never entitled to a credit for equipment attached to a motor vehicle. *See* 2000 Ariz. Sess. Laws, ch. 405, § 41, 44th Leg. (2d Reg.Sess.) (the revised legislation explains that these "are intended to be clarifying changes and are consistent with the legislature's intent when those sections were enacted.").[4]

### D. As a Matter of Law, the 2005 Amendments Do Not Support Reversal

#### 1. The Amendments Took Effect After the Refund Period

¶ 34 Taxpayers alternatively claim that amendments to the statutes in 2005 included changes significantly narrowing the availability of pollution control tax credits. According to Taxpayers, these changes indicate that the earlier versions of A.R.S. §§ 43–1081 and 43–1170 applied to their claims for tax years 1998 to 2001.

¶ 35 The amended versions of A.R.S. §§ 43–1081 and 43–1170 (2005) provide in relevant part:

B. Property that qualifies for the credit under this section includes that portion of a structure, building, installation, excavation, machine, equipment or device and any attachment or addition to or reconstruction, replacement or improvement of that property that is directly used, constructed or installed in this state for the purpose of meeting or exceeding rules or regulations adopted by the United States environmental protection agency, the department of environmental quality or a political subdivision of this state to prevent, monitor,

control or reduce air, water or land pollution *that results from the taxpayer's direct operating activities in conducting a trade or business in this state.*

C. The credit allowed pursuant to this section does not apply to:

1. The purchase of any personal property that is attached to a motor vehicle.

2. *Any property that has a substantial use for a purpose other than the purposes described in subsection B.*

3. *Any portion of pollution control property that is included as a standard and integral part of another property.*

(Emphasis added). These versions of the statutes contain no retroactivity provision. Consequently, they do not apply to Taxpayers' refund claims for tax years 1998–2001. *See* A.R.S. § 1–244 (2002) (a statute does not apply retroactively unless expressly specified by the legislature).

### CONCLUSION

¶ 36 We affirm the tax court's judgment in all respects.

CONCURRING: DONN KESSLER, and MARGARET H. DOWNIE, Judges.

---

4. The 2000 amendment applies retroactively without creating a due process violation. *See Enter. Leasing,* 545 Ariz. Adv. Rep. at 19, ¶ 21, 221 Ariz. at 127, ¶ 21, 211 P.3d at 5. No constitutional due process violation can exist because Taxpayers have no vested rights. *See Brunet,* 212 Ariz. at 538, ¶¶ 14–17, 135 P.3d at 718.