283 P.3d 34

**MICROCHIP TECHNOLOGY INCOR-PORATED, a Delaware corporation, Plaintiff/Appellant,**

v.

**STATE of Arizona and State of Arizona Department of Revenue, Defendants/Appellees.**

**No. 1 CA–TX 11–0001.**

Court of Appeals of Arizona, Division 1, Department T.

May 31, 2012.

As Amended June 5, 2012.

Review Denied Oct. 30, 2012.*

* Chief Justice Rebecca White Berch voted to grant review.

The Cavanagh Law Firm by Peter C. Guild, Kerry M. Griggs, Richard W. Mear, Taylor C. Young, Phoenix, Attorneys for Plaintiff/Appellant.

Thomas C. Horne, Arizona Attorney General by Scot G. Teasdale, Assistant Attorney General, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

SWANN, Judge.

¶1 Microchip Technology Inc. ("Taxpayer") appeals from a summary judgment. The tax court ruled that Taxpayer's sewer systems and storm basins failed to qualify for the pollution-control income-tax credit, codified at A.R.S. § 43–1170. We hold that the tax court erred when it concluded that § 43–1170(B), which describes what property is "included" in the credit, limits the broader language of § 43–1170(A). We therefore reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Taxpayer manufactures semiconductors at plants in Tempe and Chandler. Between 2000 and 2001, Taxpayer spent $45 million constructing new buildings, a parking structure and a parking lot. According to its tax-credit documentation, Taxpayer incurred expenses in dedicating real property to use for storm-water basins, in making improvements required for the installation of storm-water basins and their integrated components, and in making improvements required for the installation of sewer systems. Other property expenses included storm sewers, sanitary sewers, retaining walls, fencing footings, a block wall, a fence, a sprinkler system, a garage roof, floor drains and drains on the office roof. Taxpayer's application also claimed expenses for various construction activities: compaction, surveying, underground detection, geotechnical work, excavation and landscaping.

¶ 3 On October 14, 2003, Taxpayer applied for $191,928.84 in pollution-control income-tax credits for these items, less depreciation and costs, under A.R.S. § 43–1170. The Arizona Department of Revenue ("the Department") denied the entire claim on March 12, 2004. It found that Taxpayer's expenses failed to qualify because (1) the land-acquisition and service expenses did not qualify for the credit; (2) Taxpayer's on-site sewers were not installed to meet or exceed pollution-control regulations; (3) the storm-water retention basins served to meet city health and safety requirements in addition to flood control and other purposes; and (4) Taxpayer's documentation was insufficient. Taxpayer pursued its administrative remedies, but on January 26, 2007, the Director of the Department affirmed the denial of Taxpayer's request.

¶ 4 Pursuant to A.R.S. § 42–1254(C), Taxpayer appealed to the Arizona tax court on March 26, 2007. The Department moved for summary judgment on the grounds that (1) the tax credit could not apply because the property's primary purpose was not to control pollution and (2) the credit did not apply to real property. Taxpayer filed a cross-motion arguing that the property did qualify for the tax credit. After briefing and oral argument, the tax court held that none of Taxpayer's expenses qualified for the credit and granted summary judgment in favor of the Department.

¶ 5 This appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101.

## STANDARD OF REVIEW

¶ 6 This court reviews a grant of summary judgment de novo. *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995) (in banc). We also review the interpretation of statutes de novo. *Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, 383, ¶ 15, 166 P.3d 934, 938 (App.2007). And although we construe statutes creating tax exemptions strictly, we do not interpret such statutes so strictly that we effectively "defeat or destroy the [legislative] intent and purpose." *See State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 10, 88 P.3d 159, 161 (2004).

## DISCUSSION

¶ 7 In 1994, the Arizona Legislature enacted A.R.S. § 43–1170 "to encourage companies to consider expansion or renovations now." *Watts v. Ariz. Dep't of Revenue*, 221 Ariz. 97, 99, 210 P.3d 1268, 1270 (App.2009) (quoting Minutes of Comm. on Ways and Means, S.B. 1523 (Ariz. March 22, 1994) (statement of Scot Butler)). The credits claimed in this case belong to the 2000 and 2001 tax years. The relevant portions of the version of A.R.S. § 43–1170 in effect at that time were:

A. A credit is allowed against the taxes imposed by this title for expenses that the taxpayer incurred during the taxable year to purchase real or personal property that is used in the taxpayer's trade or business in this state to control or prevent pollution. The amount of the credit is equal to ten per cent [sic] of the purchase price.

B. Property that qualifies for the credit under this section includes that portion of a structure, building, installation, excavation, machine, equipment or device and any attachment or addition to or reconstruction, replacement or improvement of that

property that is directly used, constructed or installed in this state for the purpose of meeting or exceeding rules or regulations adopted by the United States environmental protection agency, the department of environmental quality or a political subdivision of this state to prevent, monitor, control or reduce air, water or land pollution. The credit allowed pursuant to this section does not apply to the purchase of any personal property that is attached to a motor vehicle.

## I. THE RELATIONSHIP OF THE LIST IN § 43–1170(B) TO § 43–1170(A)

¶ 8 On appeal, Taxpayer primarily challenges the tax court's holding that § 43–1170(B) limits the applicability of § 43–1170(A). Section 43–1170(A) provides a tax credit for "expenses that the taxpayer incurred during the taxable year to purchase real or personal property that is used in the taxpayer's trade or business in this state to control or prevent pollution." There is no dispute that Taxpayer made the purchases and used the items in its Arizona business. Moreover, the tax court acknowledged that Taxpayer's claim that storm water and sewage are pollutants "is probably unobjectionable."[1] During the summary judgment briefing, the Department did not dispute that the storm-water retention system and the sewer system prevent the spread of pollution. Accordingly, we hold that under the plain language of § 43–1170(A), storm-water and sewage control systems constitute "real or personal property that is used . . . to control or prevent pollution."

¶ 9 The tax court, however, held that the credit is limited to items listed in § 43–1170(B). Invoking the canon of construction *inclusio unius est exclusio alterius*, the court reasoned that the enumerated items in § 43–1170(B) define the scope of the credit. According to the tax court, if § 43–1170(A)

were to define the scope of the statute, then "the list of qualifying property contained in [§ 43–1170(B)] would be superfluous." By resorting to rules of statutory construction, the tax court implicitly found that § 43–1170 is ambiguous. *See Paging Network of Ariz., Inc. v. Ariz. Dep't of Revenue*, 193 Ariz. 96, 97, ¶ 8, 970 P.2d 450, 451 (App.1998) (rules of statutory construction are needed only when a statute is ambiguous).

¶ 10 We do not find the statute ambiguous. The language of § 43–1170(A) is clear on its face, and the interplay between subsections (A) and (B) becomes problematic only if subsection (B) is read to limit the scope of the credit defined in subsection (A). So read, subsection (A) would become superfluous. *See Grand v. Nacchio*, 225 Ariz. 171, 175–76, ¶ 22, 236 P.3d 398, 402–03 (2010) (in banc) ("We ordinarily do not construe statutes so as to render portions of them superfluous."). But the language of subsection (B), which describes what property is "included," need not—and should not—be read as imposing a limit on subsection (A).

¶ 11 In *Bernhart v. Industrial Commission*, 200 Ariz. 410, 26 P.3d 1181 (App.2001), we addressed the meaning of the word "include" in a statutory definition. We held:

> In ordinary usage, "INCLUDE suggests the containment of something as a constituent, component, or subordinate part of a larger whole." Webster's Ninth New Collegiate Dictionary 609 (1985). The term is "not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 [62 S.Ct. 1, 86 L.Ed. 65] (1941). . . . *See Adams v. Dole*, 927 F.2d 771, 775 (4th Cir.1991) (items following the word "including" may be merely illustrative or may add definitional content).

200 Ariz. at 413, ¶ 12, 26 P.3d at 1184.

¶ 12 Because § 43–1170(A) is clear, and § 43–1170(B) is properly read as illustrative,

---

1. This interpretation accords with a Title 49 statute defining "pollutant" as

   > fluids, contaminants, toxic wastes, toxic pollutants, dredged spoil, solid waste, substances and chemicals, pesticides, herbicides, fertilizers and other agricultural chemicals, incinerator residue, sewage, garbage, sewage sludge, munitions, petroleum products, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and mining, industrial, municipal and agricultural wastes or any other liquid, solid, gaseous or hazardous substances.

   A.R.S. § 49–201(29) (2011). The substance of the current statute is the same as that in effect in 2000 and 2001.

resort to the principle of *expressio unius* is unnecessary.[2] *Sw. Iron & Steel Indus., Inc. v. State*, 123 Ariz. 78, 79–80, 597 P.2d 981, 982–83 (1979). ("The doctrine of 'expressio unius' is not to be applied where its application contradicts the general meaning of the statute or state public policy."). We therefore hold that § 43–1170(B) is not the touchstone for determining whether property qualifies for the credit—the section is illustrative, not exclusive. So long as the nature or use of the property does not conflict with the import of § 43–1170(B), it may qualify under § 43–1170(A).

## II. PRIMARY PURPOSE AND DIRECT USE

■ ¶ 13 The Department argues that Taxpayer's expenses do not qualify for the tax credit because the primary purpose and function of the property is not pollution control. But the statute contains no requirement that the "primary purpose" of the property must be pollution control to qualify. In *Owens–Illinois, Inc. v. Town of Bradley*, the Wisconsin Department of Revenue similarly argued that property eligible for a tax exemption should be used primarily for the purpose of waste disposal. 132 Wis.2d 310, 392 N.W.2d 104, 105 (Wis.Ct.App.1986). There the statute referred to property "used for ... the purpose of abating or eliminating pollution." *Id.* at 105 n. 1. Noting that the statute did not contain language requiring a "primary purpose," the court held that "[t]he fact that the boiler and power house produce usable energy as well as dispose of wood waste does not negate its exempt status when the statute unambiguously provides that such property is exempt." *Id.* at 107. Like the Wisconsin court, we reject the Department's attempt to engraft a primary purpose requirement onto the language that the legislature chose. The fact that the property at issue here may serve purposes in addition to pollution control does not alter the fact that it is used to control pollution.

■ ¶ 14 The parties also dispute whether A.R.S. § 43–1170(B) requires Taxpayer's property to be "directly used" for the sole purpose of meeting or exceeding environmental regulations. The tax court did not expressly address the "directly used" language of the statute, but did find that Taxpayer's property was ineligible for the credit because it was not used only for regulatory compliance under A.R.S. § 43–1170(B). Specifically, the tax court found the tax credit inapplicable because the statute requires that "compliance with pollution control regulations be *'the purpose'* of the property. Thus, such a benefit cannot be merely *a* purpose of property having another purpose as well." (Emphases in original.)

¶ 15 We conclude that the property at issue satisfies the "directly used" requirement, and therefore does not run afoul of any legislative intent embodied in the illustrations. In *Duval Sierrita Corp. v. Arizona Department of Revenue*, this court examined whether machine parts were "used directly in ... metallurgical operations" under A.R.S. § 42–1409(B), a tax exemption statute.[3] 116 Ariz. 200, 203, 568 P.2d 1098, 1101 (App.1977). To determine whether conveyor belts, booster pumps and steel pipes were "used directly," we looked to their ultimate function, and we determined that they made the mining and metallurgical operation an "integrated system." *Id.* at 205–07, 568 P.2d at 1103–05. Wary of drawing "arbitrary lines," we found that those disputed parts qualified for the exemption. *Id.*

¶ 16 Under the reasoning in *Duval Sierrita Corp.*, we likewise conclude that the property at issue here was part of an "integrated system" to control or prevent pollution—there is no factual argument to the contrary. Though the various items for which Taxpayer claims the credit may have additional pur-

---

**2.** The Latin maxim *expressio unius est exclusio alterius*, which translates as "the expression of one thing is the exclusion of another," is sometimes formulated in at least two other ways: *enumeratio unius est exclusio alterius* or *inclusio unius est exclusio alterius*. *Black's Law Dictionary* 1717 (8th ed. 1999). The tax court used the

"inclusio" formulation; we use the "expressio" formulation, in keeping with our cited authority. Though the formulations differ, the doctrine is the same.

**3.** The statute is now codified at A.R.S. § 42–5159.

poses, there is no dispute that the system they support does control pollution. Nor is there any dispute that the property is "directly used" to support the system. Neither the language nor the purpose of the statute support an interpretation that Taxpayer's property must have only one purpose—i.e., conforming to pollution-control regulations—to qualify for the tax credit. Taxpayer's property may have more than one function within its business operations and still be "directly used" for pollution control.

¶ 17 Moreover, were we to interpret "directly used" to require a "primary purpose," we would deny effect to a 2005 amendment to A.R.S. § 43–1170. That amended version of the statute provides: "The credit allowed pursuant to this section does not apply to ... [a]ny property that has a substantial use for a purpose other than the purposes described in subsection B." A.R.S. § 43–1170(C)(2) (2005).[4] In that amended version, the legislature expressly restricts the uses of eligible property—if a property has a "substantial use" for a purpose other than that described in § 43–1170(B), then the credit does not apply. *Id.*

■ ¶ 18 The Department argues that such a requirement already exists in the earlier version of the statute and that the amendment was intended merely as a clarification. But we presume that a statutory amendment changes the existing law. *Enter. Leasing Co. of Phoenix v. Ariz. Dep't of Revenue,* 221 Ariz. 123, 126, ¶ 10, 211 P.3d 1, 4 (App.2008). And holding that one legislature understood and clarified another legislature's intent—especially years later—would "carr[y] us past the boundary of reality and into the world of speculation." *San Carlos Apache Tribe v. Superior Court,* 193 Ariz. 195, 209, ¶ 30, 972 P.2d 179, 193 (1999) (in banc).

## III. THE INTENT OF THE CHANDLER AND TEMPE REGULATIONS

¶ 19 Taxpayer next challenges the tax court's ruling that, because the relevant Tempe and Chandler regulations were not adopted for pollution-control purposes, com-

pliance with them does not qualify the property under § 43–1170(B) as property "used, constructed, or installed in this state for the purpose of meeting or exceeding rules or regulations adopted by ... a political subdivision of this state to prevent, monitor, control or reduce air, water or land pollution."

■ ¶ 20 We conclude that the relevant Tempe and Chandler provisions express the cities' intent to control and reduce pollution in a manner consistent with A.R.S. § 43–1170(B). Tempe City Code § 12–56, which falls under Article IV, "Storm Water Retention," requires

> the owner/developer of each lot, plot or parcel of land within the city, outside of the alternative retention criteria area, to provide storage of sufficient volume to hold the total runoff from the one-hundred year design storm falling on that lot, plot or parcel of land and on adjacent street and alley rights-of-way, except arterial streets.

And Article VI—called "Storm Water Pollution Control"—reflects the municipality's view of its ordinances as pollution-control measures. The article sets forth "requirements for the control of pollutants that are or may be discharged to the public storm drain system." Tempe City Code § 12–115(a). Article VI's purpose is "to improve the quality of storm water discharges and to enable the city to comply with all applicable state and federal laws, including but not limited to, the Clean Water Act, the National Pollutant Discharge Elimination System Regulations, and the Arizona Pollutant Discharge Elimination System Regulations." *Id.* (citations omitted).

¶ 21 Likewise, Chandler City Code § 45–1 requires the submission of a storm-water retention plan with each preliminary plat or site development plan. The code requires a retention basin to have the capacity to handle a "one-hundred year, two-hour storm." Chandler City Code § 45–1(B). The purpose underpinning Chandler's standards for water-retention basins and sewer systems, as well as the overall city site development plan design standards, is "to guide development

---

**4.** Because the 2005 version of the statute contains no retroactivity provision, it does not apply to Taxpayer's claim. *See Watts,* 221 Ariz. at 104, ¶ 35, 210 P.3d at 1275; A.R.S. § 1–244.

toward the highest attainable *environmental quality* at a time in which development and expansion are taking place at a rapid rate." Chandler City Code § 35–1902(1) (emphasis added).

¶ 22 Notwithstanding this language, the Department contends that Taxpayer's storm-water retention basins and storm sewers do not qualify for the pollution-control tax credit because they were installed to comply with Tempe and Chandler city ordinances and regulations, and those regulations, the Department insists, were enacted for purposes not strictly limited to pollution control.

¶ 23 The language of the Chandler and Tempe regulations indicates that pollution control is one of their general goals, if not the specific, exclusive goal. Section 43–1170(B) only provides that the goal of the relevant regulations of "a political subdivision" should be "to prevent, monitor, control or reduce air, water or land pollution." It does not state that a regulation intended to achieve an additional benefit beyond controlling pollution will be disqualified. The existence of other reasons for enacting such regulations does not deprive storm-water retention and sewage systems of their pollution-control function. The salient fact is that Taxpayer used those systems, which it constructed to conform to the city ordinances, to control pollution.[5]

## IV. TAXPAYER'S REAL PROPERTY AND SERVICE EXPENDITURES

¶ 24 Finally, Taxpayer challenges the tax court's holding that A.R.S. § 43–1170 precludes application of the tax credit to expenses for real property and services in connection with the sewer system and water-retention system. The tax court rejected the claim for real property expenses on the basis that A.R.S. § 43–1170(B) limits the credit to improvements and machinery. The tax court also held that Taxpayer's real property expenses failed to qualify as real property at-tributable to the taxable year, because the land was purchased in 1997 and the credits were claimed for 2000 and 2001.

¶ 25 Under A.R.S. § 43–1170(A), the tax credit applies to "expenses that the tax-payer incurred during the taxable year to purchase real or personal property that is used in the taxpayer's trade or business in this state to control or prevent pollution." Taxpayer purchased in 1997 the real property it later improved, and claimed the tax credit for the 2000 and 2001 tax years. Taxpayer contends the relevant date is when a taxpayer dedicates its land to a pollution-control use. In this case, Taxpayer dedicated its real property to use as storm basins within the relevant tax years: 2000 and 2001. As Taxpayer points out, the Department's own Form 315 asks taxpayers to list the date the property was "placed in service." Because Taxpayer placed the real property in service during the "taxable" years, it incurred the pollution-control expense for the real property at that point.

¶ 26 Further, we are persuaded that the real property serves a pollution-control function and is specifically made eligible for the credit by A.R.S. § 43–1170(A). A storm basin captures storm-water runoff, allowing pollutants to be filtered by underground soil and diverted from public waters. Although the statute's title alludes to pollution-control "equipment," its text expressly applies to either "real or personal property." A.R.S. § 43–1170(A). The Department asserts that the "real property" reference is designed to encompass "equipment that becomes 'real property' due to fixturization." That assertion lacks any support in the text of § 43–1170(A), and we reject it.

¶ 27 The tax court also implicitly upheld the Department's denial of the tax credit for Taxpayer's labor and engineering expenses. We cannot reconcile this position

---

5.  Importantly, A.R.S. § 35–801(5) defines "pollution control facilities" as

    real and personal properties including but not limited to machinery and equipment ... which are used in whole or in part to control, prevent, abate, alter, dispose or store, solid waste, thermal, noise, atmospheric or water pollu-tants, contaminants or products therefrom, whether such facilities serve one or more purposes or functions in addition to controlling, preventing, abating, altering, disposing or storing such pollutants, contaminants, or the products therefrom.

310

with the express provision of credits for "installation," "excavation," and "improvement" in A.R.S. § 43–1170(B). Denying the applicability of the tax credit to labor and engineering expenses deprives Taxpayer of credit for an "excavation," which is explicitly listed in A.R.S. § 43–1170(B).

## CONCLUSION

¶ 28 We reverse the grant of summary judgment in favor of the Department, and remand for entry of judgment in favor of Taxpayer. We award Taxpayer its reasonable attorney's fees on appeal pursuant to A.R.S. § 12–348(B)(1), subject to its compliance with ARCAP 21(c). We also award Taxpayer its costs.

CONCURRING: MICHAEL J. BROWN, and JON W. THOMPSON, Judges.